BROWN v. CRANE CO.

(Circuit Court of Appeals, Seventh Circuit.  October 13, 1904.)

No. 1,061.

1. PATENTS—ANTICIPATION—CORE-MAKING MACHINE.

The Grant patent, No. 513,998, for a core-making machine, is void for anticipation by prior machines for making tiles which were mechanically and functionally identical, and used in an art which is broadly analogous; both relating to the shaping of tubular bodies from earthy materials reduced by water to plastic and cohesive conditions, differing in degree only.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

On final hearing appellant's bill to enjoin appellee's alleged infringement of letters patent No. 513,998, February 6, 1894, to Grant, assignor, was dismissed for want of equity.  Brown v. Crane Co. (C. C.) 125 Fed. 34.

The patent is for a core-making machine. The claim alleged to have been infringed is the third, as follows: "(3) A core-making machine consisting of a hopper, F, located adjacent to and supplying material to a tube, D, having within it a worm, E, for forcing material out through the tube, D, an aperture, H, within said worm, and a wire, G, held in a fixed position, passing through said aperture, H, and terminating beyond the end of said worm, E,. for the purpose of forming a hole in the body of the core for the escape of the gas."

Appellee, to sustain its contention that the machine of claim 3 was antici- pated by the prior art, introduced 13 patents, including No. 25,687, October 4,. 1859, to Tiffany; No. 37,112, December 9, 1862, to Sault; No. 62,914, March, 12, 1867, to Woodcock; and No. 89,878, May 11, 1869, to McKenzie.

Walter H. Chamberlin, for appellant.

Thomas A. Banning, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above).  Cores were made by hand from the beginning to the introduction of appellant's machine.  The machines, as we understand, are not used to manufacture cores for sale, but are themselves sold to foundries to supersede therein the hand-making of the required cores.  Down to 1903 appellant placed about 350.  The advantages of the machine method are not questioned.

As early as 1859 Tiffany produced a tile-making machine, the description of which may be read upon appellant's claim 3 as follows:

"A tile-making machine consisting of a hopper, F, located adjacent to and supplying material to a tube, D, having within it a worm, E, for forcing material out through the tube, D, and a wire, G, held in a fixed position and terminating beyond the end of said worm, E, for the purpose of forming the hole in the body of the tile."

Neither Tiffany nor appellant's assignor specified the relative diameters of tube and wire.  Some tiles have thicker walls and smaller internal diameters than others, but neither Tiffany nor another could. claim invention in changing the relative diameters of tube and wire from those shown in Tiffany's drawings.  Appellant's witnesses prove that appellant's machine makes holes in the cores larger than in hand-. made cores, and that there is no fixed, required relation between in-

ternal and external diameters, except that the walls shall be thick enough not to cave in of their own weight. Tiles are formed of clay in a plastic, cohesive condition. Cores are formed of a mixture of sand and flour in a plastic, cohesive condition. The difference in plasticity and coherence is one of degree only.

The machines, as machines, combinations of moving mechanical parts adapted to receive and to apply motion to produce mechanical results, are identical, element for element, function for function.

Are the arts analogous? Broadly, both relate to the shaping of tubular bodies. More closely, both cores and tiles are made from earthy substances, reduced by water to plastic, coherent conditions, then given their tubular shapes, and then baked to hardness for use. If closer analogy were required, it seems to us that nothing short of identity would suffice.

As a patent cannot rightfully be granted merely for a new use of an old machine, it matters not whether the intuitive flash came 35 years or 35 minutes after the disclosure of the original invention.

GROSSCUP, Circuit Judge (concurring). Two facts are undisputed. The first of these relates to the difference of purpose between rubber hose and clay tile, on one hand, and appellant's core on the other; as also the difference between the character of material out of which, respectively, they are made, and upon which the machines are meant to operate. The second fact is the existence of a commercial demand, during a long period, for machine made cores—a demand that the appellant was the first to supply.

The purpose of rubber hose and clay tile is to carry off fluids or gases, gathered from sources external to the tubes themselves. The purpose of the perforation through appellant's core is to carry off gases generated in its own sands by the hot surrounding iron. Rubber hose and clay tile, therefore, are tubes proper, performing the function of tubes; while the perforation through the core is a drainage opening only.

The material out of which rubber hose and clay tile are made, is firm and cohesive. The inventor, contemplating a machine to act on such material, was not concerned with the inquiry whether the material would collapse, or how collapse could be prevented. On the other hand, the material, out of which cores are made, is a sharp sand intermixed with flour, cohesive to a very small degree, fragile, and subject to collapse on slight jar or vibration. It was due to this quality of the material, perhaps more than to anything else, that before appellant's invention, no cores were actually made except according to the clumsy molding process. Thus it appears, that though the product of the core machine, and the product of the rubber hose and clay tile machines, are in form alike, varying chiefly in the diameter of the interior opening; and though the machines themselves operate mechanically much the same; the end to be subserved, and the material to be worked upon, are essentially different. To the mind seeking a way to make a core machine, a problem was presented essentially different from the problem presented to the minds that previously created the rubber hose and clay tile machines.

When, then, the second undisputed fact is also borne in mind—that though a real commercial demand existed for machine made cores, none appeared up to the time of appellant's invention—the real merit of appellant's claim to invention is made clear, viz.: That dealing with a material previously supposed to be insusceptible to manufacture into cores by machines, appellant discovered that a practical, efficient core machine could, in fact, be made; going to the allied arts, not for the generative thought, but for the mechanical means of carrying out the thought. Does not this constitute patentable invention?

The constitutional basis of the patent laws is to promote the progress of the useful arts by giving to him who creates something new and useful a property in the thing created; and, as I look at it, the life germ of any creation is not so much the mechanical form in which it finally becomes embodied, as the flash of inspiration that, out of the darkness in which it lay concealed, first revealed its possibility. The possibility of a thing once seen, it is of no great moment that a ready mechanical means of bringing it into form is at hand; nor that the mechanical means used are similar to those employed before in the allied arts; nor that any mind would have seen the adaptability, mechanically, of what already existed to what was now, for the first time, about to exist. The true inquiry is, Did any one before, in creative imagination, actually see this new thing? Did it not require invention to discern, in the first instance, that the new thing was possible? Is it not invention to bring out of what to others seems chaos the form and feasibility of the new and useful thing?

Invention is not, in my judgment, confined to the concrete mechanical form into which an idea ultimately evolves. Invention is the idea itself, the burst of new thought, the discovery; and patentable invention is the conjunction of these with appropriate and efficient mechanical means. Confessedly, an old idea, carried out mechanically in a new form, is patentable invention. To my mind a new idea, carried out mechanically in an old form, ought equally be regarded as patentable invention. To hold otherwise is to dethrone the head and enthrone the hands—to leave genuine genius unrecompensed, while placing the inventor's crown on mechanical skill.

But there is authority for the conclusion reached by the court, notably the recent case of Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689, and, expressing my dissent on principle, I am compelled to follow that authority, and concur in the judgment reached.

The decree is affirmed.