### FAULTLESS RUBBER CO. v. STAR RUBBER CO.

(Circuit Court, N. D. Ohio, E. D. October 23, 1911.)

#### No. 7,890.

PATENTS (§ 328*)—ANTICIPATION—RUBBER NIPPLES.

The Miller patent, No. 926,011, for a nipple for use on nursing bottles, shows no practical or patentable improvement over those of the prior art, and is void for anticipation and lack of invention.

In Equity. Suit by the Faultless Rubber Company against the Star Rubber Company. On final hearing. Decree for defendant.

Percy B. Hills, for complainant.
C. E. Humphrey and Geo. W. Rea, for defendant.

DAY, District Judge. The complainant charges the defendant with having manufactured and sold certain nursing bottles which are protected by complainant's patent. The patent in suit is for a very simple article of manufacture, namely, a nipple for infants' nursing bottles. In this matter full proofs have been taken, and the cause is submitted upon final hearing.

It appears from the proofs in the case that there are many different forms of nipples for nursing bottles now on the market, and they all embody in their structure three elements: First, a mouthpiece; second, the bottle engaging neck; and, third, the intermediate body portion. The patent sued upon is No. 926,011, dated June 22, 1909, to Thomas W. Miller, for nipples.

Infringement is charged as to claim 1 of said patent. Claim 1 calls for a nursing nipple embodying a mouthpiece and neck and intermediate body portion following from said neck to receive the body of the bottle neck, the upper wall of said body portion projecting inwardly at an acute angle from its point of greatest width to form a

substantially flat wall, the diameter of the opening from said body portion into the mouthpiece being relatively small in comparison with the diameter of said body portion.

The following advantages are attributed to the peculiar form of body set forth in this patent acting as a diaphragm in these respects: First, it permits of free axial movement of the mouthpiece; second, it constitutes a guard to prevent the mouthpiece from being inserted too far into the infant's mouth; and third, the flexibility of the upper diaphragm-like wall enables it to yield evenly, and prevents any contraction or choking of the opening into the mouthpiece.

In order to understand the claims of this patent and the condition of the prior art, it is necessary to have a full understanding and comprehension of the contour and shape of the nipple manufactured by the complainant and defendant, which are substantially alike, and those nipples which have been placed on the market in other instances. For that purpose I am attaching to this opinion a sketch of these various nipples, provided by the complainant in its brief.

COMPLAINANT'S AND DEFENDANT'S NIPPLE

INGRAM — ALLEN ET AL — ARMSTRONG — KUMPF

ROTH — CATLETT — LOCKWOOD — BROOKE

As I understand it, it is not an invention to produce a process, machine, manufactured composition or matter or design which any skilled mechanic could produce whenever required, and I shall apply this well-established test to the consideration of the patent in suit. It appears to me that the patents referred to in the sketch as the Ingram, the Allen et al., and the Catlett patents require that the diameter of the opening of the body portion into the mouthpiece shall be relatively small in comparison to the diameter of the body portion. However, the complainant endeavors to establish these two distinctions by saying that the upper wall of the enlarged body portion shall (1) project inwardly at an acute angle from its point of greatest width, and (2) form a substantially flat wall.

An examination of the Ingram patent and a practical application of this nipple covered by the Ingram patent and the nipple manufactured by the complainant in my mind indicate that the upper and lower walls of the body portion of the Ingram nipple sustain substantially the same relation to each other as the intervening angle which is disclosed in the complainant's drawing and in the articles manufactured in conformity with the patent.

The Allen et al. patent—that is, the nipple made under that patent, although somewhat different in shape—appears to be functionally the same as does the Catlett patent and the Roth patent.

Now, in reference to the claim of the complainant that the upper wall of the enlarged body portion shall be substantially flat, the nipple itself does not seem to have such a substantially flat wall, but it appears rather to be slightly curved or convex. This wall, so described, substantially appears in the upper walls of the Ingram, the Allen et al., and the Armstrong and Roth patents.

Now, increased utility and usefulness is claimed for this nipple by reason of the fact that the diameter of the opening from said body portion of the article into the mouthpiece is relatively small in comparison to the diameter of such body portion. Now, the opening into the mouthpiece of several of these prior patents is smaller than the diameter of the body portion; more particularly the opening into the mouthpiece of the Ingram, the Catlett, and the Armstrong patents. Considering the entire record and all the claims of the complainant, the difference, if any, is very slight, and I am unable to see how any new or different result is secured by these small differences of contour and structure.

I cannot see how any surplus of material in the complainant's nipple is of any decided benefit, nor how the so-called bellows-like action of the walls of the enlarged portion of the nipple is of any benefit over the nipples shown in the prior art.

I have considered these facts of the case, after applying the various nipples to a nursing bottle and observing their functions. It is true that the granting of a patent is attended with a certain presumption of its validity, but the real question for decision does not rest upon that presumption alone. The entire matter should receive careful consideration from me at this time.

From an examination of all the testimony and a comparison of all

of these nipples introduced as exhibits, it seems to me that the principal attempt herein made was to distinguish the subject of the patented claim from the prior art in respect to the form, shape, dimensions, and proportions of the parts. None of these differences achieve a new result, and in fact there is very little difference in shape, form, size, or proportions. In my opinion, this alleged invention was anticipated in the prior art.

Taking this view of the cause, it is not at all necessary to consider the other questions in reference to abandonment and infringement raised by the defendant in its brief. I have perhaps, by reason of inexperience, been unable to clearly state my reasons for deciding that there is no invention in the complainant's claim, but it seems apparent to me that any skilled mechanic, with a knowledge of the prior art, could produce just exactly the same sort of nipple as the one upon which this complainant urges the validity of a patent.

It is accordingly ordered that the complainant's bill of complaint should be dismissed, at its costs.