## THOMAS LASTING WAVE CO., Inc., v. E. FREDERICKS, Inc., et al.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

No. 19.

1. **Patents ⟨⟩328—1,164,101, claims 1, 7, and 8, for hair-curling apparatus, held to lack invention.**

The Kremer and Unger patent, No. 1,164,101, claims 1, 7, and 8, for an apparatus for curling hair, which differed from the prior art only in that it was smaller, so as to be adapted to curl the newly grown hair close to the scalp without curling that which had been previously curled, *held* void for failure to disclose invention.

2. **Patents ⟨⟩328—1,103,506, claims 1, 2, and 7, for hair-steaming device, held to lack invention.**

The Unger patent, No. 1,103,506, claims 1, 2, and 7, for a device for steaming hair to impart to it a permanent wave, *held* void for failure to disclose invention.

3. **Patents ⟨⟩328—1,164,102, claim 1, for hair-waving process, held to lack invention.**

The Kremer and Unger patent, No. 1,164,102, claim 1, for a process for permanently waving hair, which differed from the prior art only by limiting the process to the newly grown hair close to the scalp, *held* void for failure to disclose invention; also, not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit for infringement of a patent by the Thomas Lasting Wave Company, Inc., against E. Fredericks, Inc., and another. Decree for defendants, and plaintiff appeals. Affirmed.

Appeal from a decree dismissing the original and supplemental bills for noninfringement of certain claims of three patents: (1) No. 1,164,101, dated December 14, 1915, granted upon an application filed December 4, 1913, to George Kremer and Ernest Unger, for an apparatus for curling hair. (2) No. 1,164,102, dated December 14, 1915, granted upon an application filed October 15, 1914, to George Kremer and Ernest Unger, for process for permanently waving hair. (3) No. 1,103,506, dated July 14, 1914, granted upon an application filed January 3, 1914, to Ernest Unger, as assignee of Grosert, for a hair-steaming device.

William A. Redding and Warren S. Orton, both of New York City, for appellant.

Charles H. Wilson, of New York City, for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). Plaintiff is the owner of the Unger patent, and is also owner of an undivided one-half interest in the two Kremer patents. Kremer is the owner of the other undivided half interest in the Kremer patents, and was made an unwilling defendant, so that the whole controversy could be disposed of in this suit. There were certain preliminary motions made in the District Court in respect of joining defendant Kremer as a party. One of these motions was passed upon by the writer, but as no error has been assigned, and as counsel for appellees, in open court,

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

waived any question of misjoinder, the question by consent is no longer in the case.

The claims involved in patent No. 1,164,101 are Nos. 1, 7, and 8; in patent No. 1,103,506, Nos. 1, 2, and 6 (claims 4 and 7 having been withdrawn on the argument); in patent No. 1,164,102, No. 1 (claims 2 and 3 having been withdrawn on the argument).

The art is the so-called "permanent" waving of hair, an extravagant commercial expression, which really means that for a few months human hair on the head, when treated in any one of several ways, will remain wavy in appearance. However, the field of business enterprise in which the art is employed apparently has become highly lucrative, and hence has arisen the desire to monopolize every improvement, however slight, and however obvious to the worker skilled in the art.

The earlier history of the art was fully considered in Nestle Patent Holding Co. v. E. Frederics, Inc. (C. C. A.) 261 Fed. 780, affirming (D. C.) 258 Fed. 627, and need not be here repeated. Prior to the time when the patents in suit were applied for, "permanent" waving, so called, was well known. It was thought and believed that during the period when the hair remained waved, new hair grew out an inch or two. It is said, because this new hair is unwaved, that it destroys the effectiveness of the waved hair. The alleged problem, then, was to provide a device and a process for waving this new-grown hair, without subjecting the rest of the hair to a repetitious waving.

For purposes of prior art discussion in this suit, we will consider the patents in their relation to each other in the following order: No. 1,164,101, first; No. 1,164,102, second; No. 1,103,506, third. The application filed by Kremer and Unger December 4, 1913, was regarded by the Patent Office as covering "two separate and distinct inventions." Then, after procedure lasting several months, Kremer canceled the process claims and filed his application for the process patent, No. 1,164,102, on October 15, 1914. Whether, on the facts, the case falls within Benjamin Electric Mfg. Co. v. Dale Co., 158 Fed. 617, 85 C. C. A. 439, we need not determine, for reasons which will appear infra.

[1] 1. *Patent No. 1,164,101.*—The specification states:

"My invention consists of a new and improved form of an electric hair-curling device, and is adapted particularly to curl and treat the roots of the hair.

"It has been the fashion for a number of years with a large number of women to have their hair treated in such a way that it will be curled and stay permanently curled. This is done by taking a number of strands of hair and curling them around a metal hair curler, and then placing the curler with the hair curled around it in an electric tubular heater, approximately six or eight inches long, so that the hair is subjected to great heat for about 20 minutes, and when taken out of the heater it is curled and remains permanently curled. Experience has shown that, in the course of a month or two, the hair will, of course, grow out, and when it does so it leaves a space of approximately an inch or two inches which is then uncurled, or in other words is substantially straight. Experience has demonstrated that if an attempt is made to curl this portion of the hair near the roots, by subjecting the whole length of the strands of hair to the heating process again, the part which has been once curled is injured by the reheating and in many instances has been wholly destroyed.

"It is the object of my invention to subject the roots or uncurled part of the hair near the head to the same process of curling and heating as has been previously done to the whole length of hair, without reheating that portion of the hair which is already curled. I accomplish this result by making the heater of approximately one inch in depth, or at the outside two inches, but preferably one inch."

Claim 1, in suit, as it finally came out of the Patent Office, reads:

"1. A heater for curling the newly grown portions of hair previously curled without reheating the old hair, comprising a short spool having a core made of heat conducting material with an uninterrupted bore from end to end through which the hair to be treated is entirely passed until only the new growth of hair is contained therein, and a resistance coil closely embracing said core."

This is one of the cases where the file wrapper is illuminating. The application for this patent as originally filed was for a "method and apparatus for curling hair." Claim 1 in this application in its original form was for:

"The method of curling hair by subjecting the roots of hair near the head to heat without heating the strands of hair already curled."

In commenting on this claim, the examiner, with humor unconscious, perhaps, and rarely discovered in a file wrapper, observed:

"Moreover this claim covers merely the obvious way of producing the result desired by applicant, since obviously the only way to curl the straight hair, leaving the curled hair untouched, is to curl the straight hair."

Claim 2 was for:

"A device for curling the roots of hair that has been already curled without heating the rest of the hair, said device consisting of an electric tubular heater approximately the length of that portion of the hair to be treated."

In respect of this and other claims the Examiner stated that—

"The dimensions of the heater and making the heater comparatively short cannot be considered to render patentable claims otherwise unpatentable."

If the office had adhered to this conclusion, time and money would have been saved.

This is not a case of the ever-present long-felt want argument. What happened here was that the hair dressers, or the customers, or both, discovered that the "permanent" wave was not as persistent in its permanency as it might or ought to have been, and a little more waving was needed now and then, because one or two inches of new grown hair menaced permanent wave stability. Whereupon the art said to the hair dresser:

"Make a short heater to curl one or two inches of hair near the scalp, without heating the rest of the hair."

This presented the simplest of problems to any one skilled in the art, and the phraseology of the claim of the patent in suit, quoted supra, so demonstrates.

Grosert and Unger, No. 1,029,361, was sufficient to negative invention. This was appreciated by the patent solicitors in their effort to distinguish the then pending application from No. 1,029,361. They

had answered the examiner's observation by stating that, "obviously, the only way to curl the straight hair is to curl the straight part that has not already been curled." "But," they continued, "the manner of doing this is not obvious. We ask how can it be done, other than by the use of a short curler, which will heat the straight part?" They then admit that Grosert and Unger, in No. 1,029,361, "put their heat at the end of the tube near the head," but urge that "the great difficulty with the Grosert and Unger device is that, while it is true that the heat is kept at one end, * * * the heating apparatus at the end heats the whole inner tube."

What Grosert and Unger were concerned with was a "hair-steaming device"; the object being to provide a heated tube adapted to surround the coil of wet hair to steam it. They accomplished their object by what they characterized as "certain novel details of construction and arrangements of parts." They had not directed their attention to heating only the one or two inches of new-grown hair, but to a hair-steaming device generally, and, quite irrespective of the other prior art, they had shown enough to negative completely the propositon that any invention is disclosed in claims 1, 7, and 8 of this patent in suit. Indeed, the solicitors for the applicant were driven, in effect, to the contention:

"Where, as in this case, a new and long-desired result is attained by changing the dimensions of device or material, by making them either larger or smaller, then patentability exists. * * *"

The most which can be said is that the advantage, if any, of plaintiff's heaters, is, as the District Judge put it:

"Purely one of size and lightness in weight, involving no new function. It is evident that such a feature in a curler operating in the old way would not confer patentability." Brown v. Crane Co., 133 Fed. 235, 66 C. C. A. 676; Faultless Rubber Co. v. Star Rubber Co. (C. C.) 191 Fed. 982.

These claims of this patent are therefore held void for lack of invention.

[2] 2. *Patent No. 1,103,506*, in view of the foregoing, needs little discussion. The object here is the same as that of No. 1,164,101. The mechanical detail is merely somewhat more elaborate. Claim 1 is illustrative and reads as follows:

"A device of the class described, comprising an open-ended tubular member of relatively high heat conductivity, having a cylindrical bore adapted to contain a portion of a coil of hair intermediate its ends, and permit other portions to extend beyond opposite ends thereof, an outer tubular member having a conical nose affixed thereto at one end, and a heating means disposed between said members, and filling the space adjacent the connection between the inner and outer tubular members, whereby a high degree of heat may be concentrated at one end of the device, to heat the portion of the coiled hair adjacent the head."

It is contended, inter alia, that the feature as to the connection between the inner and outer tubes is novel, and, of course, that the whole combination is novel. This, however, is one of those solemnly worded claims which, translated into lay English, is very simple. It might read:

"(1) A heat conductive tube with an open end, in which tube is a part of the hair, while the rest sticks out; (2) an outer tube, with a nose like a cone at one end; and (3) some heating means put between the tubes and filling the space next to the connection between the two tubes, and then you get enough heat concentrated to heat the hair next to the scalp."

If this be an operative device, we fail to discover invention. In view of the prior art, this detailed apparatus represents no more than any mechanic skilled in the art should have been able to construct.

We hold the claims of this patent void for lack of invention.

[3] 3. *The Process Patent, No. 1,164,102.*—The sole claim in issue on appeal—i. e., claim 1—reads as follows:

"In the art of permanent hair waving, the process. for waving the newly grown hair on a head of hair which has been previously waved, without damaging the previously treated old hair, which process consists in separating the hair into strands, arranging the newly grown straight hair of each strand adjacent to the person's head into a tightly wound spiral, while permitting the previously waved hair to remain in a position so as not to be affected by any heating action, confining said spiral portion, saturating the same with a saline solution, subjecting said confined saturated portion to the action of heat gradually ranging from room temperature to a maximum temperature, to give the hair a steaming treatment, said heat being directed thereto, so as not to affect the previously waved portion, permitting said heated portion to remain confined in its spiral form for a short period of time after the appli- cation of heat thereto has been discontinued, washing the hair to remove any saline solution present, and finally combing both the previously waved and the newly waved portions across the juncture of these portions."

We have searched in vain to discover any ground upon. which validity can be based, if the Kremer apparatus patent is void. We doubt whether the heaters are used as described, and as illustrated in the drawing of the patent. But we need not develop that point. If, as disclosed, this is an operative process, then claim 1 does not disclose invention over the Nessler process described in 261 Fed. 780, and processes existent prior thereto. In any event, however, the art had so narrowed that any claim under this patent must be held to its specific details. With this test in mind, the proof failed to show infringement.

The District Judge correctly summed up the evidence when he stated, in his opinion:

"Defendant steams all the hair equally, except in cases where by some special means he protects it from the heat. He rarely has attempted to steam only a portion of the hair, and where he has done this he has employed a method of protection from the heat not disclosed by the patents in suit. The dimensions of the heater have in no case affected the situation."

With his conclusions and his analysis of the testimony in respect of noninfringement, we agree.

Decree affirmed, with costs.