NESTLE PATENT HOLDING CO., Inc., v. E. FREDERICS, Inc.

(District Court, S. D. New York. July 1, 1918.)

No. 14—122.

1. PATENTS ⬦══328—VALIDITY AND INFRINGEMENT—HAIR WAVING.
 Aldworth patent, No. 1,186,533, relating to compound tube used in so-called permanent hair waving, held valid and infringed.

2. PATENTS ⬦══283(2)—INFRINGEMENT—RIGHT TO INJUNCTION—ABANDONMENT.
 That a patent infringement, testified to and proven, was abandoned before suit was brought, does not take away right of injunction in order to prevent repetition.

3. PATENTS ⬦══328—INFRINGEMENT—HAIR WAVING.
 Aldworth patent, No. 1,186,533, covering a compound tube used in so-called permanent hair waving, held not infringed by a device consisting of a borax pad to be wrapped around the coiled hair, and covered with a heat conducting, but noninflammable, tube impervious to water.

4. PATENTS ⬦══328—INFRINGEMENT—APPARATUS—HAIR WAVING.
 Nessler apparatus patent No. 1,052,166, claims 3 and 6, relating to the art of so-called permanent hair waving, held not infringed.

5. PATENTS ⬦══328—VALIDITY—APPARATUS—HAIR WAVING.
 Nessler apparatus patent, No. 1,052,166, claim 5, relating to the art of so-called permanent hair waving, held void as made up of a combination all old but a single element.

6. PATENTS ⬦══26(1)—VALIDITY—COMBINATION OF APPARATUS AND PROCESS.
 If a process displays invention over the prior art, it does not necessarily follow that the apparatus wherewith to practice it required invention also, still less is it a result that the combination claimed is valid.

7. PATENTS ⬦══328—COMBINATION OF PROCESS AND APPARATUS—INFRINGEMENT.
 Nessler process patent, No. 1,052,167, in combination with Nessler apparatus patent, No. 1,052,166, claim 4, relating to the art of so-called permanent hair waving by the vaporization of a lotion in a heated tube, held not infringed.

In Equity. Action by the Nestle Patent Holding Co., Incorporated, against E. Frederics, Incorporated. Decree directed for plaintiff in part.

Final hearing in equity. Action on Aldworth patent, No. 1,186,-533, claims 1 to 7, on all the claims of Nessler process patent, No. 1,052,167, and on Nessler apparatus patent, No. 1,052,166, claims 3 to 6, all owned by plaintiff.

Charles Neave and Willis Fowler, both of New York City, for plaintiff.

Thomas Ewing and Charles H. Wilson, both of New York City, for defendant.

HOUGH, Circuit Judge. All these patents relate to what has been oftenest called herein the art of "permanent hair waving." It is as well to state in limine, as a finding of fact, that in the literal sense of the words, there is no such thing.

Human hair is a substance having, so far as known, attributes or elements closely akin to horn, or finger nails. Heat, moisture, and

pressure will change its shape; but it will not only grow anew in its natural shape, but heat, moisture, and pressure, which suddenly applied together changed shape quickly, will (when encountered successively or in less powerful combination) remove or dissipate the contour artificially produced.

Permanent, therefore, means no more than enduring longer than other hair waving; and how enduring that is depends also on the particular kind of hair treated, i. e., whether coarse or fine, strong or weak. This finding is thought to. be fully supported by the evidence herein.

It is also proven, and, indeed, admitted by both sides, that personal skill, the almost artistic touch, and recognition of the different kinds of hair encountered on the heads of different persons, contribute very largely to the "permanency" or excellence of the unnatural curl or wave produced by the hairdresser's labors. These patents, singly or collectively, do not supplant or do away with the skill of experience. This is true of many patents and in many arts; but it is more than usually important in consideration of this cause.

[1, 2] The Aldworth patent stands by itself, and may be considered first. The seven claims in suit cover "a new article of manufacture," viz., a tubular body or structure, or a "compound" tube, the compounding consisting in the use of two or more plies of material, having a "reagent" between the plies, said plies, or the innermost ply, being of such a nature that it will permit the reagent "to alter" its condition, or be "changed from its normal condition," and, when so changed or altered, to "act upon" hair inserted in the tube.

Every claim but No. 2 requires the reagent to be a "constituent part" of the article, and the second claim demands that the reagent be "located" within the wall of the tubular body.

The specification shows clearly that all this means that Aldworth invented a portable, durable, ready-to-use tube, capable of withstanding heat externally applied, and having, beneath a porous inner skin or ply, borax. When this tube was plunged in water, put over hair, and heated, the hair had a bath of steam charged with borax or a solution thereof. It would seem plain from the disclosure alone that the invention in this "new article" consisted in embodying the portable and ready-to-use thought; but that it was this idea that carried the patent through the office is also shown by the file wrapper contents (especially paper No. 5, filed January 20, 1916, of defendant's Exhibit P).

Nothing is found in the record invalidating this patent; the man Frederics substantially admits infringement (Ev. pp. 48 and 49), and the corporate defendant offered the infringing article for sale (Plaintiff's Exhibit No. 11). Evidently the infringement thus testified to and proven was abandoned before suit brought, but that does not take away plaintiff's right to injunction in order to prevent repetition.

The usual decree may therefore pass on this patent.

The principal question of infringement, however, is whether what Frederics did to the hair of Misses Albes and McPherson in March, 1917, amounted to a violation of plaintiff's rights under some or all

of the patents in suit. Taking the evidence of these witnesses in conjunction with Frederics' exposition of his own methods in open court, what was done, and is being done, is so clear that I shall not recount evidence.

[3] So far as the Aldworth patent is concerned, the question is whether Frederics' borax pad, when wrapped around the coiled hair and covered with a heat conducting, but noninflammable, tube impervious to water, is the equivalent of the Aldworth tube.

Whether it accomplishes the same result is denied, and may be doubted, as it is probably true that *some* undissolved borax gets into the hair; but, entirely apart from this question of fact, I think Aldworth's claims are so limited to making the borax (reagent) a constituent part of the neat portable ready-to-use tube of his patent, that a pad and tube separately made and sold, and united only for use, respond neither to the claims literally read nor to the spirit of the patent.

If this be too narrow a reading of the specification language, it would, I think, be easy to confine the patent within these limits on the showing of prior art; but decision is based on the ground above stated.

The two Nessler patents represent one inventive effort on the patentee's part, and may be studied accordingly; but it seems to me that the division of original application required by the office was right, for this is not a case where the only conceivable method of infringing the process patent is by using the specific apparatus disclosed.

The extensive display of prior art (other than patents and publications) made in court convinces me that boiling or steaming hair, heating it, and while being heated in any way exposing it to borax in solution, were all very old matters in the ancient art of hair dressing.

An incomplete but not inaccurate description of Nessler's thought is to call it "piping" (Crain, 138,995), or nearly piping, hair on the head. This means that he simultaneously applies heat and moisture, and heat *through* moisture, to hair under pressure, i. e., under the torsion of the hair round the curler. As he put it in his evidence, heat alone is not enough—you must have steam.

It is to me very evident that what renders near piping possible is the electric heater, with its intense, but localized, temperature.

But the claims in suit do not depend on this antecedent and underlying truth, and therefore plaintiff's counsel summarize their contention thus:

"*Inside* of a heater, heated in any way, Nessler places a tube which incloses absorbent material surrounding hair tightly wound on a curler."

This attractive method of statement omits any mention of what it is that the absorbent material absorbs. Just as written, it describes a heating process without moisture. It will appear, I think, that in the moisture, and the way of generating the same, or applying it to the hair, lies the crux of this litigation, which, trivial as the subject-mat-

ter seems to elderly men of scanty locks, does affect the livelihood of a quite numerous class.

By way of what is denounced as infringement, Frederics (the man) has done three things: (1) Used a tube which was practically Aldworth's; (2) put "flannel against the hair" and a tube over all (Ev. p. 52); and (3) wrapped hair and curler with his "borax" or "steam" pad, and placed a tube over that. Each of these acts is said to infringe both the Nessler patents.

I inquire what were the teachings of the prior art, and what advance or change therefrom does Nessler both disclose and claim, in so much of his patents as are here in suit?

The patentee himself discloses as prior art (1,052,167, p. 1, 1. 14) a method in which the hair on the curler receives a "suitable lotion," is covered with a tube, and heat externally applied.

The evidence of divers witnesses at trial establish that curlers were long ago covered with cloth or flannel; that hair when wound was so covered; that hair and flannel were intermixed in the winding; that lotions or washes, usually containing borax, were applied to the hair or the cloth, or both; and heat was then applied to the inside of the curler. Nessler starts from this knowledge.

His disclosure is that he completely covers the hair with (e. g.) flannel "moistened with water"; he then puts "lotion" in the tube, allowing it to "collect in the closed end"; applies heat externally, and thus permits only "the gases or vapors liberated by the heat" to get at the hair through the flannel.

He nowhere specifies any particular lotion, or gives any suggestions as to its components.

On this disclosure are founded three process claims, of which the first and third literally follow the specification, and the second does not require the absorbent covering of the hair to be moistened on application.

The apparatus claims in suit vary. They are all for combinations, of which in Nos. 3 and 6 a vent for gases at the handle end of the heater, said gases to issue from the opposite end of the tube, is a stated element; and Nos. 4 and 5 leave out the vent, but include (4) an absorbent covering over hair or curler; and (5) means for binding the tube at its "open" end. All these combinations are said to define or describe apparatus for carrying out Nessler's process (page 1, 1. 11); but nowhere is any reference made to a lotion in the claims, nor is the absorbent material required to be moistened. This, however (or one wetness at all events), must be implied (see page 1, 1. 41 et seq.), or else there can be no gases to escape through the specified vent.

[4] Considering these claims somewhat technically, perhaps, the third and sixth apparatus claims are not infringed, because, assuming that good combinations are stated, Frederics' heater has no vent; nor can I think that the end of his projecting tube pricked, and lightly stuffed with cotton, is the equivalent of a vent in the heater furnishing exit for gases issuing from the inner or head end of the tube.

[5] The fifth apparatus claim describes absolutely (so far as it goes) what Nessler himself discloses as prior art, except for "means for binding" the tube at its open end. The means disclosed are to "tie down on the hair" said "open end"; in other words, to fasten the mouth of a bag with a string. When a combination is all old but one element, and the addition of that element is not invention, the claim is void. Such is the case here.

[6] The fourth apparatus claim describes (when a steam producing liquid is assumed) something that may be used to practice the patented process. If the process displays invention over prior art, it does not necessarily follow that the apparatus wherewith to practice it required invention also, still less is it a result that the combination claimed is valid.

Whether any of these apparatus claims show (in the light of the disclosure and evidence) a new function evolved from the combination, or anything more than an aggregation, I very much doubt; thinking that the recent decision in Grinnell, etc., Co. v. Johnson, etc., Co., 247 U. S. 426, 38 Sup. Ct. 547, 62 L. Ed. 1196 (June 10, 1918), has firmly called us back to simple and rigid rules regarding claims of this class; and the calling was much needed.

[7] But whether I am right or not in this view of combinations, it is certainly generous to the patentee to consider the process claims in conjunction with the fourth apparatus claim as one invention. When this is done it seems to me plain that all Nessler did was to take a known apparatus, of curler tube and heater, and, instead of applying "lotion" to the hair direct, put it inside the tube, first covering the hair with flannel or the like, and then heat as before. The result sought was to allow the "lotion" to get at the hair only in vapor form and only through the flannel; but, judging from the difference between the process claims, it was indifferent whether water (on wet flannel) touched the hair or not.

The broadest possible statement of this invention (disregarding technicalities of claim language) is that Nessler was the first to "treat" coiled hair with vaporized lotion only, and that lotion may mean solution of borax or plain water—in short, anything that steams. On this reading Frederics' borax pad is not an infringement; it is a different principle, viz., to mix the borax with, or scatter it into, the hair. No more was his placing of borax between folds of flannel, and for the same reason. Using Aldworth's tubes would infringe the process, thus broadly interpreted.

I cannot, however, interpret the claims now under consideration so broadly. It is true that "lotion" may mean water alone, and a borax solution, whether fluid or vaporized, on application is a "lotion," as defined in dictionaries.

But Nessler plainly meant something else by lotion, i. e., something which by its ingredients assisted in curling; if this were not so, he would never have differentiated between the water which moistened his flannel and the lotion to be vaporized in his tube. Indeed, in his testimony he seems to me substantially to admit the use of a

preparation regarded by him as sufficiently valuable in "permanent curling" to be kept secret. (Ev. pp. 41 and 43.)

If, then, the vaporizing of a lotion is an essential part of the patented process, Frederics' does not infringe, and never did; and I make this finding.

Finally, assuming that Nessler's process wave is the most permanent known, I think that by his own evidence he has relegated Frederics' to a lower and less permanent class.

Misses Albes and McPherson went to Frederics', paid apparently full price, received what by Frederics' own demonstration was his most permanent *adornment*. One wave lasted about three months; the other was reduced to a remnant at the hair end in a year. Hair grows about six inches in a year, as testified; and I took judicial notice that the young woman's hair was over a foot long. Therefore Frederics' best curl wore out in much less than a year, and of it Nessler said "it was a bad job" (pages 155–156).

Assuming this to be true, the truth depends on one of two things— either Frederics' principle was wrong, and different from that underlying Nessler's patented process, or the matter is mostly one of semi-artistic skill. I personally incline to the latter opinion, but neither solution of Frederics' "bad job" helps out these patents in this suit.

Plaintiff may take a decree on Aldworth; the bill as to the Nessler patents is dismissed—on claim 5 of 1,052,166 because it is void, on all others because not infringed; no finding is made as to invalidity of other Nessler claims. No costs will be allowed to and including entry of decree.