## E. FREDERICS, Inc., v. EUGENE, Limited (two cases).

## SAME v. VICKERY.

### (District Court, S. D. New York.   May 8, 1924.)

1. Patents ⬤⟹27(1), 56—Mere new use of old invention not patentable.

Mere new use alone of an old invention cannot be made subject of valid patent, but anticipation cannot be predicated on a structure which requires modification in order to adapt it to a use for which it was never intended.

2. Patents ⬤⟹36—Commercial success as evidence of invention.

Mere commercial success produced by advertising methods would not be evidence of invention; but, if device at once displaced others on market, such evidence would be relevant and persuasive.

3. Patents ⬤⟹26(1)—Combination of old elements possessing no new result not patentable.

A combination of old elements, involving no new co-operative function, and possessing no new result other than convenience and economy, is not patentable.

4. Patents ⬤⟹328—1,313,232, claims 5 and 7, held valid and infringed.

Frederic patent, No. 1,313,232, claims 5 and 7, for hair-waving means and process of producing same, held valid and infringed.

5. Patents ⬤⟹328—1,425,956, claims 9 and 10, held valid and infringed.

Frederic patent, No. 1,425,956, claims 9 and 10, for hair-waving means held valid and infringed.

In Equity.  Suits by E. Frederics, Inc., two against Eugene, Limited, and one against William H. Vickery.  Decrees for plaintiff.

Charles H. Wilson, of New York City, for plaintiff.

Sheffield & Betts, of New York City (Drury W. Cooper and E. W. Vaill, both of New York City, of counsel), for defendants.

WINSLOW, District Judge.  These actions, tried together, are brought for injunctions and accountings against the above-named defendants upon two patents issued to E. O. Frederics, formerly E. O. Speckerman, which patents have been duly assigned to the plaintiff. In the first suit against Eugene, Limited, and in the suit against defendant Vickery, there is involved the patent No. 1,313,232.  In the second suit against the defendant Eugene, Limited, is involved the consideration of patent No. 1,425,956.  The second suit above against Eugene, Limited, and the suit against the defendant Vickery originally involved also a third patent, the Roos patent.  This Roos patent was withdrawn from both suits at the trial.

The first patent above involved against the defendant Eugene, Limited, and the defendant Vickery (No. 1,313,232 issued August 12, 1918, upon application filed June 30, 1917, for "hair-waving means and process of producing same"), involves claims 5 and 7 of that patent, which are as follows:

"5. A device of the class described, comprising an envelope formed of textile material having located therein a hair-treating substance in powdered form, said envelope being adapted to be shipped in flat form, and when

moistened being adapted to be wrapped about a tress of hair so as to closely embrace the same.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"7. A device of the class described, comprising a flat envelope formed of absorbant material having located therein a hair-treating substance in powdered form, and said first-named envelope being inclosed within an envelope of flexible material."

The second patent involved in the second suit against Eugene, Limited, relates to No. 1,425,956, issued August 15, 1922, upon application filed September 17, 1920, for "hair-waving means." In this latter patent the only claims sued upon and involved herein are Nos. 4, 9, and 10. Claim 4 was, however, withdrawn from consideration at the beginning of the trial. Claims 9 and 10 are as follows:

"9. A device of the class described, comprising a casing, one portion of said casing having a hair treating substance therein and being penetrable by steam and another portion of casing being formed of material relatively impenetrable by steam.

"10. A device of the class described comprising a casing, one portion of said casing containing a hair treating substance and being so formed as to permit steam to pass therethrough, and another portion of said casing being relatively impervious to the passage of steam and being also nonheat-conducting."

Both of these patents relate to what has been termed the art of "permanent hair waving." Permanency, however, apparently indicates more enduring. The word "permanent" would seem to be a misnomer. The evidence would indicate that for many years it has been customary for hairdressers to change the natural shape of the human hair by the application of heat and moisture and pressure. It would seem to be undisputed that in thus producing an artificial wave, borax in solution has been in common use, and the steaming of hair, using borax as a carrier and retainer of moisture, are all very old matters in the art.

Taking up claim 5 of the first patent involved, the defendant, in substance, contends (1) that similar devices were in common use by others more than two years prior to the date of Frederics' application; (2) that the alleged device patented was old in other patents; (3) that no invention was involved, regardless of prior use or earlier patents.

As to the first contention, several witnesses have testified as to the use of flannel strips to which paste was applied at the time of the operation, which strips were wrapped spirally around the tresses of hair. These witnesses have testified, in substance, from memory—not from records—of the use of steam and pressure and borax as a carrier of moisture. No single device similar in method and construction to plaintiff's, made or in use prior to plaintiff's so-called "steam pad" for more than two years before Frederics' application was filed, was produced at the trial, nor did these witnesses substantially corroborate each other as to things material to the issue herein.

As to the second contention, various prior patents are presented, which defendant contends are pertinent and antedate plaintiff's patent, but all of these patents relate to arts quite remote from that of hair waving. In claims 5 and 7 of the patent under discussion there is

included, as an element, "a hair-treating substance in powdered 'form." There is a further limitation in claim 5 that this envelope containing this hair-treating substance is "when moistened being adapted to be wrapped about a tress of hair so as to closely embrace the same." Reference to the specification indicates that it is from this moisture, retained by the borax, that steam is generated.

[1] Claim 7 is further limited, in that the flat envelope is of an absorbent material and contains the hair-treating substance, which envelope is, in turn, "inclosed within an envelope of flexible material." Therefore, in the hair-dressing art, for which this so-called "steam pad" in suit is used, the distinct principle is involved of a moistening of the absorbent material and the generation of steam therefrom. The reference to prior patents of the so-called medicated plasters does not disclose that moistening and steaming are any part of patents issued therefor. The Cooper patent (No. 144,315), for illustration, recites:

"Care must be taken not to wet the compound as this would destroy its medical properties."

To say that home-made poultices or a physician's compress have to do with this prior art is beside the point, although it will be freely admitted that the mere new use alone of an old invention cannot be made the subject of a valid patent. "Novelty is not negatived by any prior accidental occurrence or production, the character and function of which was not recognized until later than the date of the patented invention sought to be anticipated thereby." An anticipation can hardly be predicated upon a structure which requires modification in order to adapt it to a use for which it was never intended. The Hull patent (No. 785,951) for a powder puff, referred to by defendants, suggests the same answer as the Cooper patent, and so with the Bogia patent, No. 36,353. It is not sufficient to constitute an anticipation that the alleged earlier devices might, by modification, be made to accomplish the functions performed by the patent in suit, particularly when such devices were not designed by their makers, nor yet adapted nor used at any time for the performance of such functions. Topliff v. Topliff, 145 U. S. 156, 12 Sup Ct. 825, 36 L. Ed. 658.

As already indicated, the only method in use for many years for waving human hair was the use of the flannel strip and borax paste; but on June 13, 1916, there was granted a patent known as the Aldworth patent, No. 1,186,533. The device covered by that patent was a compound tube formed by rolling up a strip of pasteboard, tissue paper, and borax powder in such a way that the pasteboard forms a tubular structure having a lining of tissue paper, with the borax powder interposed between the tissue paper and the inner wall of the tube. The borax is concealed within the tube. This tube, when dipped in water, moistens the borax on the interior. This moistened tube then is superimposed upon the strand of hair upon the curler. These tubes are of uniform size, and the insertion of the strand of hair may displace the borax, or there may be too little or too much moisture; the borax on the inside of the tube not being visible. If the borax powder is displaced, and the heat is applied at such point of displacement without the moisture, injury to the hair may result, even though the operator be skillful.

In the patent in suit, the steam pad may be manufactured in quantities. When used, it is moistened; the proper amount of moisture being easily ascertained. The thickness is uniform, and the sewed retaining envelopes prevent the borax from sifting out. It is easily applied, uniform in its results, and the borax cannot be displaced, as may be the case in the Aldworth tube, either by shipping or upon application to the hair. The steam pads are capable of transportation without deterioration. When wrapped around the hair, this pad, thus inclosing the strand of hair, is covered by an ordinary pasteboard tube and heat applied. This Aldworth patent has been the subject of court review. Nestle Patent Holding Co. v. Frederics (D. C.) 258 Fed. 627, and (C. C. A.) 261 Fed. 780. In that case the court, in substance, held that the steam pad in the instant case did not infringe the Nestle patent.

[2] As to the third contention, that the patent referred to is not an invention, regardless of its use by others or its supposed disclosure in earlier patents, it is pertinent to inquire whether others working in another art failed to adapt these old devices to the new use in the present art. The witness Rilling, president of the Chicago & Illinois Hairdressers' Association, testified that plaintiff's steam pad practically revolutionized the art of permanent waving, and was safe, quick, and efficient. Mere commercial success, produced by shrewd advertising methods, would not be evidence of invention; but, if the device in question at once displaced others upon the market, such evidence would be relevant and persuasive.

As to the question of infringement, the defendant contends that the device used by him, in any event, is quite different from that used by the plaintiff. He contends that he uses only a thin fabric envelope to hold the borax in position, and entirely omits the paper envelope within the fabric. But the demonstration in the presence of the court indicates that defendants' device is substantially the same and works upon the same principle as that of the plaintiff. The court is not disposed to differ with defendants' counsel when he contends that the mere terminology of a claim does not determine infringement, when the parts indicated thereby are functionally different. Westinghouse v. Boyden Power Brake Co., 170 U S. 537, at page 568, 18 Sup. Ct. 707, 42 L. Ed. 1136. But with equal force it may be argued that functional dissimilarity of plaintiff's patents from the prior art makes plaintiff's patents valid, and functional similarity of defendants' device to that of the plaintiff makes defendants' device an infringement of the plaintiff's.

The defendant in the instant case contends that his device does not infringe claim 7, because that claim calls for an envelope of absorbent material inclosed in the envelope of flexible material, whereas the defendant's device would seem to be merely a reverse of these enclosing envelopes, although the material of one of the envelopes used by defendant is cellophane, with very many very small perforations.

[3] A combination of old elements, evolving no new co-operative function, and possessing no new result, other than convenience and economy, is not patentable. But plaintiff's device is a distinct advance in the art, and I believe his claims should be sustained.

The main attack on the second patent in suit, No. 1,425,956, is based on the contention that claims 9 and 10 are unwarranted, and not within the original specifications. This device is adapted to wave newly grown hair adjacent to the scalp without injuring or disturbing hair further from the scalp, which may have been previously waved. The growth of the human hair, said to be about one-half inch per month, requires additional treatment from time to time, to preserve the general appearance. It is said that it is undesirable to again wave the hair previously treated, as many operations may dry out the hair, or otherwise injure it, besides disturbing the existing wave.

This patent is a casing consisting of two envelopes. One end of the casing contains the borax powder, and the other end contains a sheet of material relatively impenetrable by heat and steam. This part of the casing may be of paper, felt, or asbestos. In using this device, the hair is wrapped on the curler as usual, but the "steam pad" is so positioned upon the strand of hair thus wound about the curler that only that part of the strand sought to be waved is covered by that part of the pad containing the hair-treating material. Part of the hair which has been previously waved is covered by the part of the steam pad which is relatively impervious to heat and steam. When the tube is placed on the hair, thus wound, and the heat turned on, only that part of the hair in contact with the hair-treating substance is waved.

A very small amount of the steam, however, reaches the hair previously curled at the upper end of the pad, which keeps the hair from drying out and burning; but the amount of steam thus reaching the hair already waved does not affect the wave; but the moisture does protect the hair, as stated, from drying or burning. The patent No. 1,449,874, Exhibit No. 9, issued to Eugene F. Suter, apparently has the identical object in view as the patent now under discussion The specifications of this patent (page 1, lines 14 to 71, inclusive) are as follows:

"In the known process of permanently waving human hair, a tress of hair is tightly wound upon a curler, which is preferably provided with means for tightening the coils after they have been wound, moisture or a moist pad is applied to the wound tress, and the whole is completely enclosed in a capsule and heated. Hitherto the moisture, usually in the form of a lotion, has been put on to the hair or into the capsule or a moist pad, usually containing a large proportion of borax, has been wound on to the hair or attached to the inside of the capsule, and in all such cases the steam or vapor produced when the heat is applied has been able to circulate inside the capsule and to reach all parts of the tress.

"It is well known that human hair grows out from the head at the rate of about half an inch a month, and that when the process of permanently waving is repeated, which is usually done about every six months, there is a length of hair near the root end of each tress which has never been waved before, while the rest of the tress should not need rewaving at all. I have found that the common practice of tightening the coils only at the root end of the tress and of applying the heat only at the end of the capsule containing the root end of the tress does not prevent the other end of the tress being rewaved so long as the steam or vapor produced inside the capsule can reach all parts of the tress. Moreover, the frequent waving of the same length of hair tends to make it brittle and frizzy at the tips.

"According to this invention I cover the tress, after it is wound and tightened upon the curler and before the moist pad is applied, with a layer of impervi-

ous material which is perforated in an irregular manner, and I prefer also to cover the moist pad after it is applied with another layer of impervious material which is not perforated, so that, when the whole is enclosed in a capsule and heated, the steam or vapor can only reach the tress at the parts and in the quantities required to produce the appearance of naturally wavy hair. Instead of being in separate layers, the edges of the two pieces of impervious material may be joined together, with the borax pad between, so as to form a compound pad or cachet with an impervious exterior irregularly perforated on one side, which compound pad or sachet after being suitably moistened may be placed over the wound tress in a single operation requiring less time and skill than the adjustment of separate layers."

Claims 9 and 10 of the second patent, which have already been quoted, apply directly to the infringing device, and no prior art has been set up in the answer which would seem to modify their scope or validity The defendant contends that those claims were inserted by way of amendment and covered different features of the invention and included new matter and were probably suggested by defendant's patent No. 1,449,874 on the device produced subsequently to the filing of plaintiff's application.

I think, however, that those claims are readable upon the original disclosure, and do not introduce new matter, but rather bring his application into its proper relation with the prior art.

[4, 5] I am of the opinion that the patents in suit should be sustained, and the prayer of the complaint granted as to the two patents' under consideration. Settle decree on notice.