## E. FREDERICKS, Inc., v. EUGENE, Limited (two cases).

### SAME v. VICKERY.

(Circuit Court of Appeals, Second Circuit. November 10, 1924.)

### No. 161.

**1. Patents ⚖328—1,313,232, claims 5 and 7, hair-waving device, held invalid, as not embodying invention.**

Speckerman patent, No. 1,313,232, claims 5 and 7, for devices for permanent waving of human hair, *held* invalid, as anticipated by prior patents and not involving invention.

**2. Patents ⚖20—Mechanical change or alteration not invention.**

Where a change is readily made in any composite instrumentality, the change is not the prompting or production of invention, since mere mechanical facility can alter or change the form in which originality and merit express themselves.

**3. Patents ⚖20—Transfer of idea of device from art of medicated plasters to art of permanent hair waving held not invention.**

Where a patent for a composite device produced no new result in the process of permanent hair waving, the transfer of the idea from the art of medicated plasters *held* not invention.

**4. Patents ⚖172—Patentee limited by claims which cannot have limitations read into them for purpose of avoiding anticipation.**

Claims for a device for hair-waving means cannot have limitations read into them for the purpose of avoiding anticipation in the prior art; the patentee being limited by his claims as made.

**5. Patents ⚖328—1,425,956, claims 9 and 10, for hair-waving device, held anticipated and lacking invention.**

Frederick patent, No. 1,425,956, claims 9 and 10, for hair-waving device, *held* invalid for anticipation and lack of invention.

**6. Patents &#9919;167(1)—Specifications followed to determine meaning of terms.**

Specifications of a patent must be followed as to what the terms of a patent are intended to mean.

**7. Patents &#9919;17—Claims for hair-waving device designed to apply borax to one portion of hair and protect another portion held not to embody invention.**

Claims of a patent for hair-waving device designed to apply borax to a portion of the hair desired to be waved, and at the same time protect the hair not desired to be waved from heating effect of electric heater, *held* not to embody invention but mechanical skill only.

**8. Patents &#9919;313—Permitting plaintiff to withdraw suit without prejudice after issue joined held error.**

Under District Court equity rule 8, authorizing the court after issue joined to refuse to permit plaintiff to discontinue if justice so requires, *held* error to permit plaintiff to discontinue suits for patent infringement without prejudice, where such withdrawal was substantially prejudicial to defendant.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suits by E. Fredericks, Inc., two against Eugene, Limited, and one against William H. Vickery. Decree for plaintiff (298 F. 633), and defendants appeal. Reversed, with directions to dismiss bill in each case.

Appeals from the United States District Court for the Southern District of New York. The first two suits involve two patents for permanent waving of human hair, to wit, No. 1,313,232 and No. 1,206,917. The third suit is for infringement of patent No. 1,425,956 for hair-waving means. A decree was entered permitting the withdrawal of the first and the second suits involving the patent No. 1,206,917 and in favor of the plaintiff on the others. Defendants appeal. Reversed.

Sheffield & Betts, of New York City (Drury W. Cooper and Edward W. Vaill, both of New York City, of counsel), for appellants.

Charles H. Wilson, of New York City (William L. Morris, of New York City, of counsel), for appellee.

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. These actions were tried together, and will be considered in one opinion.

The first patent, No. 1,313,232, was issued to Speckerman on August 12, 1919, on an application filed June 30, 1917, and relates to a flat double package made of paper and cloth containing powdered borax; the container is stitched longitudinally to hold the powdered borax in position within the coverings or envelopes. As thus made, the pad is used in permanent hair waving. The hair is first wrapped or twisted around a metal curler or rod, the package is wet or moistened, and then wrapped around the hair on the curler, and a pasteboard tube is then slid over the curler and moistened package, and then the cylindrical electric heater is placed over the parts thus arranged. Thereafter the electric current is allowed to pass through the heater until steam and borax vapor are produced by the heat generated, which, upon entering the hair wound on the metal curler, causes the same to produce the so-called permanent wave or curl. The heater and pasteboard tube are removed, the hair remains in a more or less curly condition, depending, of course, upon the skill of the operator and the appliance used. In thus applying the curlers and heaters to the human head the scalp is divided into a number of sections from which the hair is applied to separate curlers and treated with separate heaters so that in the course of this operation there are some 40 or 50 curlers and heaters in use at one time.

The claims in suit are:

"5. A device of the class described, comprising an envelop formed of textile material having located therein a hair treating substance in powdered form, said envelop being adapted to be shipped in flat form, and when moistened being adapted to be wrapped about a tress of hair so as to closely embrace the same. * * *

"7. A device of the class described comprising a flat envelop formed of absorbent material having located therein a hair treating substance in powered form, and said first named envelop being inclosed within an envelop of flexible material."

Patent No. 1,425,956, the basis of the third suit, is designed to treat only the hair newly grown after previous treatment by the pad of the first patent. The need therefore is found in the fact that human hair grows half an inch per month after the permanent wave treatment, and it is intended by the use of this patent to accomplish the result of securing a permanent wave for the newly grown hair. This patent provides a small pad of borax, the rest of the package being felt or the like. There are slight variations in the matter of placing the borax

within the envelop and a block of flexible porous material, such as blotting paper or felt is added. The envelop or pad is used in the same manner as in the first patent, the purpose of the blotting paper or felt being to protect the portions of the hair which have been previously waved against both the steam and heat. The claims involved in this patent are:

"9. A device of the class described, comprising a casing, one portion of said casing having a hair treating substance therein and being penetrable by steam and another portion of casing being formed of material relatively impenetrable by steam.

"10. A device of the class described comprising a casing, one portion of said casing containing a hair treating substance and being so formed as to permit steam to pass therethrough, and another portion of said casing being relatively impervious to the passage of steam and being also non-heat-conducting."

The court below found both these patents valid and infringed, although the defense of anticipation by prior patents and uses, lack of invention, and noninfringement were interposed.

We will consider patent No. 1,313,232 first. There is an admission that it has been the practice to wind a lock of hair upon the curler and then wind about the curled hair a strip of absorbent material which has been impregnated with a fluid commonly used in the art of hair curling, whereupon the curled hair and absorbent material are subjected to the action of heat. Also the tubes made of pasteboard or other materials have been used for locating therein hair-treating substances. But the contention of the appellee is that it has an improved pad which is more convenient to handle and more readily saleable. The process is substantially the same as that used in the tube of the Aldworth patent, No. 1,186,533, or in the Nestle tube patent, No. 1,052,166, both of which were heretofore judicially considered. Nestle Patent Holding Co. v. E. Frederics, Inc. (D. C.) 258 F. 627; affd. (C. C. A.) 261 F. 780. The patent in suit states that the method of winding a strip of absorbent material about the hair is objectionable for several reasons, among them, the length of time required to wind the absorbent material on the curled hair; the fact that the absorbent material will not take up a sufficient quantity of hair-treating fluid to make its action effective; the fact that handling the wet strips of material makes the process distasteful to the subject, as well as inconvenient for the operator. It says of the tubes

3 F.(2d)—35

of the Aldworth patent, which have hair-treating substances located therein, that they are objectionable, in that during transportation the hair-treating substance is apt to be dislodged from the interior of the tube, and that, owing to the variations in the size of the carriers of hair-treating substance within the tube, it is sometimes difficult to position these tubes about the curled hair.

[1] The patentee says that the objects of his invention are: (a) Shortening the length of time required to wind absorbent material on the curled hair; (b) increased quantity of hair-treating fluid contained in the pad; (c) convenience in handling; (d) convenience in transportation; (e) even distribution of the hair-treating material. It was decided by the District Court, and affirmed by this court in the case referred to, that the Aldworth patent was valid and infringed. Thereupon the appellee, who was the defendant in that litigation, experimented, resulting in his securing the patent in suit. It is apparent that what he accomplishes in his new construction is a separation of the pad of the Aldsworth or Nestle tube from the rolled paper cover, and he placed cotton gauze around it to prevent the pad from tearing when handled or sold as a flat separate package. It is intended that when used it is to be combined with a pasteboard tube, giving the advantage of what Aldworth accomplished by the borax package being contained within the tube in cylindrical shape when sold and used. In other words, the patentee provides for the rolling and insertion of the pad into the tube at the time of use instead of before marketing. Thus the patentee kept his package separate from the tube and covered it with a gauze to make a more durable or a thicker package. In order to hold the borax powder more firmly in position, he stitched the pad on a sewing machine as he illustrates, but this is not claimed in the claims in suit. The pasteboard tubes have to be used with a pad in any event, and also have to be shipped to the customer. What has been accomplished in making this flat package is pointed out in the prior art in so far as inclosing and shipping various kinds of powder and materials are concerned, even including borax Patent No. 56,353, dated July 17, 1866, to Bogia and Taylor. Although this was not of the same art as hair curling, this patent shows the method of forming a pad which is now introduced into the hair-waving art. All the substantial features involved in the use of a paper pad containing borax powder for the purpose of hair curling were old. In the patent to Cooper, No. 144,-

315, there was shown a pad stitched as were the Bogia and Taylor pads, and this contained a mixture of alum and borax. That patent discloses the method of making pads which has been adapted as an expedient by the patentee. Borax packages were applicable when wet for curling hair, and this knowledge was old.

[2, 3] The court below decided that anticipation could hardly be predicated upon a structure which required modification in order to adapt it to a use for which it was never intended. As an abstract rule that is true, as where the only existence of similar devices in the prior art was some device which required a change to adapt it to an entirely new use and there was no other device previously used to serve the same purpose. But the record shows a flat envelop or pad of paper had been used in this prior art, as illustrated by the Aldworth tube. The idea of invention is clearly old and acknowledged by use in the prior art, and all the patentee did was to leave this pad in its flat condition, add gauze to it, and stitch it. This idea is illustrated in patents of the prior art referred to. The patentee here could not use paper covering alone, because it would tear when wet, and he put cloth around it for the same purpose that cloth is put around plasters and poultices. We think an ordinary person, skilled in the art, could make this slight change in the Aldworth patent. Where a change is readily made in any composite instrumentality, the change is not the prompting or product of invention. It is the common experience in patent cases that mere mechanical facility can alter or change the form in which originality and merit express themselves and assert for it a claim of invention. Such pretention is not invention. N. Y. Scaffolding Co. v. Chain Belt Co., 254 U. S. 32, 41 S. Ct. 21, 65 L. Ed. 116. No one or more of the features of the patentee's pad produced a new result in the process of permanent hair waving, and the transfer of the idea from the art of medicated plasters to the art of permanent hair waving is not the conception of inventive thought. It is a matter of commercializing a device, to wit, a pad. A patent for the application of a freezing mixture for the preservation of fish or the like in a closed chamber wherein congealing medium has no direct contact with the atmosphere of the preserving chamber was held invalid, in view of prior use of like instrumentalities for the prevention of decay of corpses. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200.

[4] In Jay v. Weinberg (C. C. A.) 262 F. 973, a suit on a patent in the art of water-elevating, the principle of operation whereby a fluid is lifted by vacuum suction and discharged by gravity was held to be identical with an alleged patent for gravity fed carburation where the feed tank was filled by elevating gasoline from a lower to a higher reservoir. Claims of the character of those in suit cannot have limitations read into them for the purpose of avoiding anticipation in the prior art. The patentee is bound by his claims as he makes them. He cannot go beyond the claims and contend that, because the prior art does not show a pad adapted for use in hair dressing or permanent hair waving, identical with appellee's pad, that the claims are therefore valid. The prior art shows, as illustrated by the Aldworth patent, paper borax pads; also poultices and plasters and flat strips of fabric having borax between the folds. We think the claims of the patents in suit are anticipated by these devices, and that the slight modifications in the appellee's device as now used in this permanent hair-waving art, created no advance and demonstrated no inventive thought as it produced no improvement in the curled or waved hair result. It was error below to hold this patent valid.

[5-7] As to the second patent in suit: The borax pad described is similar to that of the patent we have just considered. The patentee here made the borax portion of the pad smaller, and to fill the space occupied in the first patent by borax he does it with a block of flexible porous material such as blotting paper or felt. Asbestos is also mentioned as a substitute. The object of a smaller area of borax is to confine the curling to the newly grown hair and not affect that still waved by the previous treatment. The casing is a strip of flexible woven material such as gauze fabric or cheese cloth. The purpose of the flexible porous material is said in the specifications to be for wrapping around that part of the hair which has already been waved or which is not intended to be waved, so as to act as a protecting medium whereby that portion of the hair will not be affected by the process. It is understood that this block of material will not be immersed in water, but will be left in a dry condition so that no steam will be produced during the waving operation. The claims do not describe the materials of the appellee's pad as are set forth in the specifications. The casing of the patent in which the porous material or asbestos is included

is made entirely of paper and cloth. Paper and cloth are penetrable by steam, and claim 9 states, "another portion of casing being formed of material relatively impenetrable by steam." The appellee's pad as described in the patent and offered in evidence has no portion of the casing made of material impenetrable by steam. Flexible porous material, such as blotting paper and felt, is not impenetrable by steam, nor is asbestos. But claim 10 states, "another portion of said casing being relatively impervious to the passage of steam and being also non-heat-conducting." But it is not impervious to steam, and there is no portion of the casing of the appellee's pad that has these qualities and apparently refers only to a block of porous material or asbestos. The specifications must be followed as to what the terms are intended to mean. The paper and cloth admittedly must allow the passage of steam, and the only other remaining element, except the borax, is the porous asbestos pad.

We regard the claims here involved as nothing more than the shortening of the borax portion and the substitution in place of the part previously occupied by the borax of a felt or asbestos block. It involved nothing more than mechanical skill to apply the borax to a portion of the hair desired to be waved and at the same time protect the hair not desired to be waved by the material that will reduce the heating effect of the electric heater. Thomas Lasting Wave Co., Inc., v. E. Fredericks, Inc. (C. C. A.) 277 F. 186. It was not invention to make a shorter borax pad to curl one or two inches near the scalp and protect the rest of the hair. Since this was the only problem involved in the thought of this invention, we must hold that inventive thought was not displayed and that the patent in suit is invalid.

[8] The bill of complaint on the Roos patent, No. 1,206,917 which was involved in the first two suits, was withdrawn upon application of the appellee and over the protest of the appellant. Equity rule No. 8 of the District Court provides:

"Voluntary Discontinuances. If justice requires, the court, after issue joined, may refuse to permit the plaintiff to discontinue, even though the defendant cannot have affirmative relief under the pleadings, and though his only prejudice is the vexation and expense of a possible second suit upon the same cause of action."

This rule was effective when this cause was tried. We think it was error to permit the withdrawal of this suit without prejudice. It did prejudice the defendant, and was contrary to the rule of the court. It was the kind of abuse of practice which led to the promulgation of equity rule No. 8. The withdrawal without prejudice was improvidently granted, and that part of the decree should be reversed with directions to dismiss.

The decree is reversed, with directions to the District Court to dismiss the bill in each case.