INDIANA LAMP CO. et al. v. ALVO MFG. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. February 9, 1924.)

No. 3882.

1. Patents ⊂⇒328—1,156,624, for duplex lighting system, held invalid..

The Pagin patent, No. 1,156,624 for a duplex lighting system, *held* invalid, as for a mere aggregation of old devices.

2. Patents ⊂⇒328—1,194,658, for automobile lamp, held valid and infringed.

The Pagin patent, No. 1,194,658, for an automobile lamp, so constructed as to enable the driver to shut off the upward glare on meeting other cars, claims 1 and 4, *held* valid and infringed.

3. Patents ⊂⇒191—Monopoly not lost by nonuse of device.

While the fact that a patented device has not been put into practical use requires careful scrutiny of the claimed monopoly, it does not affect such monopoly, if it exists.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the Indiana Lamp Company and James R. Pagin against the Alvo Manufacturing Company and others. Decree for defendants, and complainants appeal. Affirmed in part, and reversed in part.

Ralph G. Lockwood, of Indianapolis, Ind. (Virgil H. Lockwood, of Indianapolis, Ind., on the brief), for appellants.

A. J. Hudson, of Cleveland, Ohio (Thurston, Kwis & Hudson, of Cleveland, Ohio, on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The Indiana Company and Pagin brought the usual infringement suit against the Alvo Company, alleging infringement of the Pagin patents, 1,156,624, October 12, 1915, for a duplex lighting system, and 1,194,658, issued August 15, 1916, for a combination automobile lamp. The court below held that the claims in suit of the earlier patent were invalid, as mere aggregations, and for want of invention, and that the later patent was not infringed.

[1] As to the first patent, we agree with the court below. Claim 2 illustrates both those sued upon. It is:

, "In duplicate lighting systems, a suitable casing, differential and separate sources of illumination, supports within said casing for the sources of illumination, separate reflectors for each source, and means for maintaining the parts in adjustable and operative relation to each other."

This claim clearly described a mere aggregation of parts, as defined in Gas Co. v. United Co. (C. C. A. 6) 228 Fed. 684, 143 C. C. A. 206. There is nothing in common about the two light-reflector units, except that they are both mounted in the same carrying frame. Such mounting does not give patentability, nor does the adjustability of each part in itself or with reference to the other. The claim would be infringed by two ordinary flash lights, of different size, mounted in an open front carrying case, and with holding means for adjusting them relatively. The District Judge accurately says:

"When both units are lighted, they operate simultaneously, and will no doubt produce a more brilliant light; but the light then produced is the sum total of the light furnished by each. There is no modification of the function or the operation of either lighting unit by the presence of the other."

[2] The second patent is intended (among other objects) to prevent that glare from an automobile headlight of the present common form which may dazzle and blind the driver of the meeting car or other person approaching from the front. It seems to be a fact, upon which all agree, that the direct rays of the electric bulb, passing out of the front of the headlight reflector, are not usually seriously dazzling, but that this effect mainly comes from the reflected rays. It also appears that, with the common form of parabolic reflector, if the bulb is (1) at the true focus, the rays will be thrown horizontally forward as a cylindrical beam of light; if the bulb is (2) in front of the focal point, the rays will be concentrated in a narrowing cone, extending forward

from the headight; while, if the bulb is (3) back of the focus, the reflected rays will at once take the form of an expanding cone. It is evident, also, that in the second form named the rays which are reflected upward and forward from the bottom part of the reflector continue on upwardly after they meet those which are reflected down and forward from the upper part of the reflector. The dazzling effect upon an approaching eye is therefore produced by the rays reflected either from the upper or from the lower part of the reflector, according as the bulb and the lamp focus are respectively arranged. It naturally follows that an opaque screen, designed to cut off this upward glare, should be located above or below the horizontal center of the reflector, according to the focal position of the bulb, and that each arrangement is the full equivalent of the other.

Pagin's patented lamp is shown in longitudinal vertical cross-sections by Figure 2 and in front view by Figure 1, herewith reproduced.

*Fig. 1.*    *Fig. 2.*

His plan was, focussing by plan (2), to use the lower reflector for ordinary driving, giving the full effect, including the objectionable upward glare, but when meeting another vehicle to shut off the lower reflector and use only the upper one, thereby getting sufficient reflection forward and downwardly, but little or none upwardly. It would not seem material whether the trouble-making reflection is prevented by screening it off after it starts, or by eliminating that part of the reflector from which it comes, so that it never can start—by obstruction or by prevention. Pagin adopted the latter of these alternative destructive methods. The central lower part of his upper reflector was cut away, and the lower reflector came up through it. Hence, in this form, the upward reflection into the eye of the approaching driver would not occur. Plainly, if the

296 F.—40

device were turned upside down, the other alternative method of destruction would come into play, and the troublesome reflected rays, starting upward, would be cut off by the projecting portion of the other (then upper) reflector.

The theoretical utility of this arrangement is very clear; the practical utility, when all parts are proportioned and assembled as they would be by any one intelligently applying the theory, is hardly disputed; and we find nothing in the prior art anticipating or showing that Pagin's step in advance was not a substantial invention. The novel thought was that the two reflectors, mounted for simultaneous or contingently alternate use, should each serve its full purpose as a reflector, but one of them should also serve as a screen, or equivalent cut-off, modifying the normal action of the other reflector, and by this combination to obtain a new and useful lighting result, saving space otherwise required, and saving separate screen parts. This is stated as one of the objects of his invention, it is performed by this construction, and it is not particularly important that Pagin contemplated using some dimming means for anti-glare purposes as well as, or in aid of, this construction.

The nearest two devices in the prior art (assuming them to be prior) are Kush, No. 1,148,101, and Meador, No. 1,205,916. Kush showed two reflectors in combination, with one situated partly in front of the other; but this arrangement was not for the purpose which Pagin had, nor would it accomplish Pagin's result in any degree. If the Kush device were the later, and were sued as an infringement of Pagin, it would undoubtedly escape, upon the principle that a structure does not infringe merely because the language of the claims, in the broad meaning of the mere words, may cover it. The words must always be interpreted by the specification; that furnishes the "lexicon." Since, for this reason, it would not infringe, if later, it does not anticipate, if earlier.

Meador has the two reflectors, alternately usable, but one does not partially overlap and screen the other; the screen (if any) is independent of the second reflector, and he had no problem of ascending reflected rays.

Claims 1, 2, 3, and 4 are sued upon. We have grave doubt whether claim 3 can stand upon the disclosure, because the claim is very specifically confined to construction where a portion of one reflector is placed in front of a part of the other, so as to *obstruct the ascending rays* from the latter. This obstruction does not happen, in great degree, if at all, in the form shown. There is rather the prevention of such rays; and the broader view, including prevention and obstruction, but not calling for either, is covered by other claims. We think claims 1, 2, and 4 are valid; the validity of 3 becomes immaterial.

[3] It appears that plaintiffs have never manufactured under this patent, or made affirmative commercial use of it. This situation tends to induce careful scrutiny of the patentee's claimed monopoly before it is sanctioned; but it cannot be a material element in determining whether the monopoly exists, save perhaps in a margin line case. The patentee has a right to take this course and derive his profits from any

other forms which he thus guards against competition. Paper Bag Case, 210 U. S. 405, 422, 28 Sup. Ct. 748, 52 L. Ed. 1122.

Coming to the subject of infringement: The defendant uses a device of which a front view is indicated by Figure 1, and a side view by Figure 2, in his design patent herewith reproduced.

Claims 1 and 4 are given in the margin.[1] It is quite plain that Figure 2 of defendant's device shows substantially the same structure as Figure 2 of the patent would if turned upside down, and refocused to give diverging rays. If there is any material difference, it is shown by the front view. The black portion shown in Figure 1 indicates a metallic plate which closes the opening in the front of the reflector holder, excepting for the entire area of the front end of the upper reflector and the lower half of the front end of the lower reflector. It is defendant's contention that it is this plate which serves as a screen, in some forms cutting off the upwardly reflected rays from the upper part of the lower reflector, and in some forms inoperative because these rays are prevented, and that, while the upper reflector is so positioned as to respond to the terms of the claim, it does not have the screening or preventing function characteristic of the reflector of the Pagin patent.

We cannot agree with this contention. It seems necessarily to follow, from the principles of reflection involved, that the central, upwardly reflected rays from the lower reflector in the form shown in Fig. 2 (if focused for converging rays) will be cut off by the central lower

[1] 1. In automobile lamps, a single casing, a lamp unit, comprising a pair of reflectors attached to each other, so that the curved portion of one partially stands in front of the other, a separate lamp for each reflector, means for holding the unit in the casing, means for independently focusing each lamp, and means for selectively supplying current to the lamps.

4. In an automobile headlight, a single casing, an illuminating unit comprising a pair of reflectors placed one above the other, so that the two axes are a less distance apart than the diameter of either reflector, the body of one being removed to form a clearance for the other, and means for supporting the same within the casing.

portion of the upper reflector, and that those rays which would not be so cut off, and which, except for the plate, would escape around the diagonally lower parts of the upper reflector, will be only those directed further down and sidewise, and hence cannot be seriously blinding directly in front. In another form, the upwardly diverging rays from the upper part of the lower reflector are similarly screened. The reflectors shown in Figure 2 are probably much flatter than they would be in actual use. Samples of defendant's commercial structure and of one concededly built like the Pagin patent were exhibited and tested upon the argument. The decisive test is made by removing the metallic plate from the defendant's lamp and substituting other means to hold the two reflectors firmly in their respective positions. This plate being removed, defendant's lamp, as so modified, and the one made according to plaintiff's patent, throw upon the screen substantially the same light and shadow. When these two devices are put side by side and directed slightly downward, as automobile lamps are, each alike creates a blinding glare upon the eye of the observer some distance in front when the perfect reflector is used, and substantially no glare when the light comes from the broken or obstructed reflector. On the contrary, when defendant's upper reflector is removed, and the plate remains, the main part of the blinding reflected rays pass through the plate opening, and the glare exists, though less intense. Hence it is the upper reflector, not the plate, which effectively obstructs.

Such confusion as there has been in these actual tests perhaps comes from the fact that these structures were assembled and the parts relatively placed for use on automobiles where the casings are pointed slightly toward the ground, and that if they stand horizontally on a table, but the observer is not correspondingly elevated, his eye in both cases will be in the unscreened zone, but when defendant's metallic plate is replaced, and the obstruction thus extends a little further down, the protected area also becomes lower.

The centrally depending tab on defendant's metallic plate serves chiefly to screen the direct rays from the bulb. Of course, it has screening effect also upon some of the ascending rays; but it is not needed to make defendant's device operate according to the law of plaintiff's patent. It only compensates for a little less overlapping.

Claims 1 and 4, we think, are infringed. Claim 2 contains a restriction as to the size of the obstructed area which raises doubt as to its infringement. The broader claims being valid and infringed, it is not necessary to decide as to claim 2.

The form of defendant's device shown by its Figure 2 is not the one it finally adopted, which is distinctly closer to Pagin. We do not overlook that, if in the use of Figure 2, the lower light is so focused as to give only diverging reflecting rays, it will create no upward glare, and the overlapping upper reflector will not screen off any such glare; but this construction brings the same result by prevention. The upward rays, which would come from that upper part of the normal reflector, which defendant made and then cut off, are not permitted to start. This is within the fair scope of equivalency. Those upwardly diverging rays which arise in defendant's later form, and except for

the plate would escape around the lower arc of the upper reflector edge, diverge sidewise too much and upwardly not enough to make serious glare directly ahead.

Our conclusions are that as to the first Pagin patent the decree below dismissing the bill should be affirmed, and that as to the second Pagin patent the decree should be set aside and the case remanded, with instructions to enter the usual decree for injunction and accounting as to claims 1 and 4.