**NESTLE–LE MUR CO. v. EUGENE, Limited.**

No. 5787.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1932.

F. O. Richey, of Cleveland, Ohio (F. M. Bosworth and Richey & Watts, all of Cleveland, Ohio, on the brief), for appellant.

Alfred W. Kiddle, of New York City (Wylie C. Margeson, of New York City, Squire, Sanders & Dempsey, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

This is an action for infringement of patent No. 1,266,879, issued to Eugene Francois Suter, May 21, 1918, for electrical heating apparatus for permanently waving hair. Claim 1 is the only claim in suit, and is printed in the margin.[1] The District Court found

this claim to be valid and infringed as against defenses of anticipation, aggregation, want of invention, and noninfringement. The defendant below appeals.

The human hair is waved (permanently, so called) by winding strands or tresses tightly around suitable curlers, dampening with borax solution or other preferred preparation, enclosing these coils in stiff paper tubes, inserting in tubular electric stoves, and applying heat. The patentee is said to have discovered that, since the hair is coarser and more abundant near the roots, that portion requires heating for a longer period than nearer the tips, where it is finer and more easily injured by excessive heat. To accomplish this result, or practice this method, the patentee duplicated the electric stoves or heaters in common use (see patents to Grosert and Unger, No. 1,103,506, and to Kremer, No. 1,164,102), and connected the electric circuit in parallel to the resistance or heating coils, so that by the operation of a switch the current to the upper or outer heater could be connected or disconnected at will. The two heaters are coaxially arranged, attached to each other and held in position by hollow struts through which the electrical connections pass, and, except for these struts, are separated by air gaps to prevent heat from passing from one to the other. The method employed by the plaintiff for use of this device is first to connect electrically the lower heater, or that next to the head, and, after that heater has been in operation for a given period of time, to connect the upper or outer heater by means of the switch. Both heaters then remain in use until the waving operation is completed, and thus heat is applied for a longer period to that portion of the hair nearer the roots. The device of the patent is said by the defendant to be but the obvious and logical means of accomplishing the desired end of applying heat for different periods of time to the different longitudinal sections of the hair, to involve no more than the ordinary skill of an electrician, and to represent merely a duplication of parts, and hence not to be patentable.

The defendant's device is an almost exact copy of the plaintiff's commercial device, but is claimed not to infringe chiefly for two reasons, (1) because the connecting struts are of aluminum, a metal of high heat conductivity, and the two heaters are thus said not to be "heat insulated from each other"; and (2) because in operation the defendant first passes current through both heaters for a given period of time and then disconnects the upper heater whereby the heat is said to

[1] "1. In electrical heating apparatus adapted for use in permanently waving hair, a plurality of independent tubular heaters arranged along a common axis so as to be heat insulated from each other, and in combination with a switch whereby one of such heaters may be put into and out of operation independently."

be thereafter maintained throughout both heaters by the sole operation of the lower unit. The patent says nothing as to the material of which the tubular struts are to be made, and it is obvious that, if these struts are composed of a metal of high heat conductivity, which joins the tubular members forming the inner and outer casings of the heater, which members are likewise of high conductivity, the two stoves cannot be completely "heat insulated" from each other. Claim 1 as originally presented in the application contained no call for heat insulation. It was rejected upon reference to the patent to Grosert and Unger, supra, and other patents, and was canceled, and claim 1 as now contained in the issued patent was substituted. Under these circumstances it is at least very doubtful whether any device could be said to infringe which did not have the several units heat insulated from each other, and whether the defendant's device, in spite of similarity of construction to plaintiff's commercial device, is so insulated. See Grand Rapids Refrigerator Co. v. Stevens (C. C. A.) 27 F.(2d) 243; Southern Textile Machinery Co. v. United Hosiery Mills Corp. (C. C. A.) 33 F.(2d) 862; Reynolds Spring Co. v. L. A. Young Industries, 36 F.(2d) 150 (all C. C. A. 6). In our opinion, however, the case need not turn upon this now well-established principle.

■ We are not impressed by the contention that, because the defendant, as manufacturer, instructed its vendees to operate the heaters by a method differing from the method employed by the plaintiff, or even by a method which is in direct opposition to plaintiff's method, infringement is thereby avoided. Both plaintiff's and defendant's heaters are susceptible of operation in the same manner. The patent is a machine patent, and, so long as all of the mechanical and electrical elements are identical in both the defendant's and the patented devices, and both are capable of being operated in the same manner and to accomplish the same result in substantially the same way, there would be infringement through manufacture and sale notwithstanding different methods of use were employed by the hairdresser vendees.

■ Defendant also attacks the utility of the device, contending that human hair is neither coarser nor more abundant near the roots to an extent requiring application of heat for longer periods to those portions. We have no doubt that by copying and using the patented device the defendant has estopped itself from claiming want of utility in the sense of the patent statute. Seymour v. Ford Motor Co., 44 F.(2d) 306, 308 (C. C. A. 6), and cases there cited. As pointed out by us in the decision just cited, this defense of want of utility is distinct from that of lack of the exercise of the inventive faculty, as to which no estoppel arises because of infringement or use.

■ We come then to what we consider the main issue upon the present record. Conceding the utility, or even the necessity, of applying heat for a longer period to the hair near the roots in order to procure a better and more permanent hair wave, the only real advance in the art seems to lie in, or result from, the discovery of the advantages of that method. Having made this discovery, the patentee designed the obvious electrical device to effect his purpose. We say "obvious," for it seems to us that, if the desired end of applying heat for different periods to different sections of the hair had been disclosed, it was well within the realm of electrical and mechanical skill, in view of the prior art, to arrange a plurality of heaters along a common axis, corresponding to the sections of hair to be differently treated, to construct resistance or heating coils within each of said units, of the size and material best adapted to produce the intensity of heat desired, and to connect such heating units in parallel and with such switches that each might be operated independently of the other or simultaneously. The question of law thus presented may perhaps be stated as follows: Where one discovers a new and useful process for accomplishing a given result, is the obvious mechanical or electrical device, obvious to any one to whom the proposed method is disclosed, patentable apart from the process? We are constrained to the opinion that it is not.

■ In Corning et al. v. Burden, 15 How. 252, 267, et seq., 14 L. Ed. 683, the court refers to the fundamental difference between process and machine patents, calling attention to the fact that a process may be patentable irrespective of any particular form of machinery or mechanical device for practicing it. Such process patent will cover all means of practicing the process although such means may not be pointed out in or disclosed by the specification. One may not secure a process patent merely covering the operation of a machine, for such a patent would be but for the function or operative effect of the machine (Westinghouse v. Boyden Co., 170 U. S. 537, 557, 18 S. Ct. 707, 42 L. Ed. 1136); but, on the other hand, a patent for a new and

useful process is not invalidated because of a lack of novelty in the mechanical means disclosed for practicing it. The subjects covered by patents for a process and for a machine, although frequently related and in a sense often founded upon the same mental concept, are nevertheless in substance independent and radically different. As clearly stated in the authorities here cited, "a machine is a thing," while "a process is an act, or a mode of acting"; "a new process is usually the result of a discovery; a machine, of invention." In Cochrane v. Deener, 94 U. S. 780, 788, 24 L. Ed. 139, it was distinctly pointed out that a process may be altogether new, and produce an entirely new result, while the machinery "suitable to perform the process may or may not be new or patentable." [2] The same thought underlies the language of Mr. Justice Bradley in Tilghman v. Proctor, 102 U. S. 707, 728, 26 L. Ed. 279, and the decision in Risdon Locomotive Works v. Medart, 158 U. S. 68, 79, 15 S. Ct. 745, 39 L. Ed. 899, where it was held that a process patent was invalid because all that the patentee invented was a machine. We see no reason why the converse of this is not equally true, or why a machine patent which does not meet all the tests of patentability applicable to machine patents should not be held invalid for that reason, notwithstanding the patentee may have discovered a clearly patentable process. Compare, also, Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034.

 These decisions seem to approach the question of the separate patentability of a process and the machine for practicing it solely from the viewpoint of the novelty of each, and this is not precisely the question with which we are confronted, namely, whether other now well-recognized tests of the patentability of machines must here be applied with the performance of the process steps, in their order, as the previously recognized and desired end, as the purpose for the accomplishment of which the machine was designed. We are of the opinion that they must be so applied. A machine is a device or combination of devices by means of which energy

can be utilized or a useful operation can be performed. It is adapted to rendering a mechanical service or to the fabrication of material so as to change its form or produce a desired product. Doubtless superiority of the product, or the more economical and efficient performance of the service, is always the ultimate end sought—the test of an advance in the art and of the utility of the machine—yet, where the entire utility of such machine depends upon the method of its use in following the successive steps of a prescribed process in the true sense of this word, the situation is analogous to that presented by an aggregation; the ultimate improvement in product or service is not determinative of the question of invention, but of utility only; the ultimate unity of operative result is to be disregarded and must yield, as a criterion, to the fact that separate operations are independently performed by the several units, and the court must determine whether, with the performance of these several operations in view, an exercise of the inventive faculty was required to organize the machine. Compare, Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222; Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196; E. Fredericks, Inc., v. Eugene, Ltd., 3 F.(2d) 543, 547 (C. C. A. 2). This principle applies to the present case, for, apart from the process disclosed, the device of the patent in suit lacks all patentable utility.

If we are right in the conclusion just reached, the language of the Supreme Court in Saranac Mach. Co. v. Wirebounds Co., 282 U. S. 704, 51 S. Ct. 232, 75 L. Ed. 634, is in point. It is true that a method patent had there issued simultaneously with the machine patent in suit, as well as a previously issued and then expired product patent, the applications for all of which had been copending, and that the court limited itself to a decision upon the validity of the machine patent. It is also true that the court seems to base its decision largely upon an attempted extension of the monopoly of the expired reissue (product) patent by resort to the machine patent (a position difficult to sustain, since the applications were copending); but the opinion also deals with the question of the exercise of the inventive faculty in the creation of a machine to perform the method disclosed in the product patent first issued, and this necessitates that the practice of the process be accepted as the end in view in determining the validity of the machine patent. Thus on page 713 of 282 U. S., 51 S. Ct. 232, 236, 75 L. Ed. 634, the court says: "Given the

---

[2] Thus patents are frequently issued for the machine and/or the process, but the question of patentability of each must be separately decided. The machine of the Eibel patent, No. 845,224 (see 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523), although in a sense practicing a new and useful method of paper making, is an example where the means adopted to produce speedier production was not obvious to the skilled mechanic, and the machine was therefore held to evidence the exercise of invention, and to be patentable apart from any process. Such examples might be greatly multiplied.

method of the reissue patent, failure to adapt these obvious means to the solution of the problem in hand would, we think, have evidenced a want of ordinary mechanical skill and familiarity with them. Their adaptation to the new use was not the creative work of the inventive faculty. It was 'but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice.' "

This language is peculiarly applicable to the present case, and, so applying it, the problem was how to heat different sections of the coiled hair for different periods of time, that is, how to practice the method; and the obvious solution of that problem was by duplication of the electrical heating device common to the art, the multiple units being so connected that they might be operated singly or simultaneously. This was but the exercise of the mechanical and electrical skill naturally to be expected.[3] The fact that no method patent was applied for or issued seems to us immaterial. Having discovered a new and useful method, which we assume was patentable as such (although see Thomas Lasting Wave Co. v. E. Fredericks, Inc., 277 F. 186, C. C. A. 2), a machine patent was applied for and issued upon an unpatentable device. This was an error in judgment and administration for which the courts cannot and should not afford a remedy.

It is also clear that but little prejudice could result from an inventor's indecision as to whether his invention should properly be the subject of a patent for a machine or an article of manufacture, or of a patent for an article of manufacture or a composition of matter. These three subjects of patent are in a true sense all products or articles, but all differ fundamentally in nature from a process. Cf. Burr v. Duryee, 1 Wall. 531, 568, 17 L. Ed. 650. The latter is not a "thing." It may be protected and patented only as a process, and failure to observe this distinction is here fatal.

The decree of the District Court is reversed, and the cause is remanded, with instructions to dismiss the bill.

---

[3] It also represents but a duplication of operative parts, which likewise is not invention. Slawson v. Grand Street R. Co., 107 U. S. 649, 2 S. Ct. 663, 27 L. Ed. 576; Dunbar v. Myers, 94 U. S. 187, 24 L. Ed. 34; Indiana Lamp Co. v. Alvo Mfg. Co., 296 F. 623 (C. C. A. 6); Condit Elec. Mfg. Co. v. Westinghouse Elec. & Mfg. Co., 200 F. 144 (C. C. A. 1); Nathan Anklet Support Co. v. Cammeyer, Inc., 264 F. 968 (C. C. A. 2).