SHERWIN–WILLIAMS CO. v. CALIFORNIA SPRAY CHEMICAL CO.

No. 5880.

Circuit Court of Appeals, Sixth Circuit.

Oct. 14, 1932.

Charles Neave, of New York City (Charles Neave and Maxwell Barus, both of New York City, on the brief), for appellant.

Wilber Owen, of Toledo, Ohio (Livingston Gifford, of New York City, and Wilber Owen and Owen & Owen, all of Toledo, Ohio, on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Suit for alleged infringement of patent No. 892,603, issued July 7, 1908, for a "Process of Making Arsenate of Lead," granted to Luther and Volck and assigned to appellee. The suit was not brought until within three years before, and was not tried until after, the expiration of the patent. The only relief now available, therefore, is an accounting. The patent has a single claim, to wit: "The process of making arsenate of lead which consists in reacting upon lead oxid held in suspension in water with arsenic acid in the presence of a catalytic agent, the lead oxid and arsenic acid being used in the proportion of their combining weights."

The defenses were: (1) Noninfringement; (2) laches; and (3) the alleged Vreeland anticipation.

This is the third appearance of the patent here. It was sustained in Toledo Rex Spray Co. v. California Spray Chemical Co. (C. C. A.) 268 F. 201, and Toledo Rex Spray Co. v. California Spray Chemical Co. (C. C. A.) 30 F.(2d) 495. Following these cases the District Court held the claim valid. It further held against the Vreeland anticipation and that the claim was infringed.

We concur as to the Vreeland defense. We content ourselves with saying that anticipation was not established with the certainty required by law.

Before 1892 arsenate of lead was principally used in the manufacture of paints. About that year the discovery was made that it was valuable as an insecticide and could be used as such without injury to the foliage when it was mixed with water and applied as a spray upon agricultural and horticultural plants.

Luther's problem was to supply the demand for it in commercial quantities. He proposed to speed up the reaction above indicated through the presence of a catalytic agent. The features of his process as reflected in the claim are: (1) Use of lead oxide and arsenic acid in the proportion of their combining weights; (2) the chemical reaction upon lead oxide; (3) held in suspension in water; (4) with arsenic acid; (5) in the presence of a catalytic agent.

He explains his process as follows: "A combining weight of lead oxid (PbO) commonly termed litharge, is reacted upon by a combining weight of arsenic acid, the litharge being held in suspension in water, and the arsenic acid in solution, and the reaction is effected after a catalyzing agent has been added. This catalyzing agent may be either nitric acid or acetic acid. * * * The product is arsenate of lead, slight traces of lead salts of the catalyzer, and the catalyzer."

When acetic acid is used as a catalyzer, the specification explains, by the use of three chemical equations, that the first reaction is the formation of lead acetate; the second of basic lead acetate; and the third of ortho-arsenate of lead. The specification continues: "The free acetic acid now takes more PbO and cycle begins again."

This theory of the patent was accepted by this court in the Toledo Rex Spray Cases, supra.

Appellant also manufactured arsenate of lead. It produced a solution of basic acetate of lead by the treatment of lead oxide with acetic acid in water. It did this by either one of two methods, that is, the "Tower Liquor" process (an old process) or its "Tank" process. The weight of the evidence is that the basic lead acetate in these solutions was a separate chemical compound having a definite individuality. Acetate of lead was certainly a common article of commerce for

many years prior to the issuance of the patent. Appellee could have readily purchased it in the market instead of producing it.

As a second step appellant mixed its basic lead acetate solution with arsenic acid and stirred the mixture in water until arsenate of lead was precipitated. This method of producing arsenate of lead was very old.

The cardinal feature of the case is the question of infringement.

The fundamental element of the claim is the catalytic agent. Its presence results in the production of arsenate of lead by the three successive steps above indicated. These steps are cyclically repeated until the batch of lead oxide and arsenic acid is fully transformed into arsenate of lead.

We do not think that appellee has shown that appellant used these three steps cyclically repeated. Simply stated, appellant produced basic lead acetate by an old method and then by an older method allowed the compounds, acetate of lead and arsenic acid, to react directly upon each other to form the arsenate.

In producing its basic lead acetate appellant does not follow the first two steps of the patent. Reaction upon lead oxide by arsenic acid is absent for arsenic acid is itself absent.

In producing its arsenate of lead appellant does not follow the third step of the patent. In this step of its process there is present neither the acetic acid nor lead oxide in suspension in water to be acted upon by arsenic acid.

Appellee points out that there is evidence of instances in appellant's tank process in which the mixture of litharge, water, and acetic acid in the tank was not sufficiently stirred, and that therefore particles of litharge remained undissolved, and that upon the addition of the arsenic acid there was reaction between the arsenic acid and these particles of litharge in the presence of acetic acid liberated from the basic acetate of lead present and that this at least was infringement. Suffice it to say, we find no evidence that in any such case acetic acid was released from the basic acetate of lead compound or that particles of litharge were ever reacted upon by the arsenic acid. On the contrary, it was shown by appellant's foreman who was responsible for carrying out the process that the batches of lead acetate, arsenic acid, and water were so manipulated that all the arsenic acid would combine and that a practical test showed that this had been done and that no arsenic acid was left to react upon undissolved litharge.

We conclude that appellant has not infringed.

Appellee's patent requires that certain things should be done "in the presence of a catalytic agent" with or to lead oxide and arsenic acid to produce lead arsenate. See Cochrane v. Deener, 94 U. S. 780, 788, 24 L. Ed. 139; Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 255, 48 S. Ct. 474, 72 L. Ed. 868; Nestle-Le Mur Co. v. Eugene, Ltd., 55 F.(2d) 854, 857 (C. C. A. 6). These things are to be done in a certain way and by a certain series of acts cyclically repeated.

We fail to find that appellee has used appellant's process. Its method is essentially dissimilar. This conclusion does not oppose the opinions in the Toledo Rex Spray Cases, supra. The methods there held to infringe were of the character claimed by the patent.

Our conclusion renders it unnecessary to pass upon the question of laches.

The decree will be reversed with directions to dismiss the bill.