## VACUUM OIL CO. v. GRABLER MFG. CO.
### No. 6009.

Circuit Court of Appeals, Sixth Circuit.
Dec. 6, 1932.

See, also, 53 F.(2d) 975.

F. F. Dorsey, of New York City (Tolles, Hogsett & Ginn, of Cleveland, Ohio, on the brief), for appellant.

Thos. H. Sheridan, of Chicago, Ill. (Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., on the brief), for appellee.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Defendant below appeals from a decree of the District Court holding valid and infringed claims 1, 7, and 8 of patent to Rosenfeld and McCabe, No. 1,741,118, granted December 24, 1929, for a sign and method of manufacturing the same. Claim 1 is a method claim; claims 7 and 8 are product claims. We shall discuss first the product claims in suit, of which claim 7 is typical and is printed in the margin.[1]

For some years prior to the final development of the sign of the patent, the appellant had used round, double-faced signs of the pedestal type, about twenty-four inches in diameter, made of 16-gauge sheet metal coated with vitreous enamel. Because of the thinness of the metal and the brittleness of the coating, these signs were often bent, or the coating was chipped off around the edges, in handling and in use. To prevent this the appellant suggested to the appellee, and to other manufacturers of such signs, that a sign be designed with a reasonably heavy reinforcing ring about the periphery of the enameled portion.

The first designs were submitted by others than the appellee, and in these the reinforcing ring was made of round tubing mashed down, bent to semicircular shape, opened up to receive the enameled sign, and the two pieces then butt welded so as to form a continuous integral ring of substantially "U" cross-section. This design was not entirely satisfactory, for it gave visual evidence, in

---

[1] "7. A device of the character described comprising a sign consisting of a channel shaped frame member bent into the form of a cylindrical hoop and permanently embracing the periphery of the sign, a fitting embracing the abutting ends of said channel member and terminating at its lower end in a stud adapted to be secured to the upper end of a pedestal and fastening devices extending through the fitting, frame and the peripheral portion of the sign."

its roughness and at the points of welding, of the way in which it had been made. However, having been designed by others, it is a complete anticipation of the product claims in suit, unless, from the language of the claims that the channel shaped frame member is "bent into the form of a cylindrical hoop" and that the fitting embraces "the abutting ends of said channel member," we are to infer that the claim is limited to a structure in which the frame is fashioned from a single strip of flat metal with the attending economy of manufacture and neatness of appearance.

Another suggested method of accomplishing the desired result was to use two rings, one of which was provided with a lip or grooved extension within which the other ring (a split hoop) was sprung and there held under tension. This design required a certain amount of machining, and was obviously more costly to manufacture than the integral strip frame.

But, even if the claims are limited as above indicated, we see nothing in the experience of the appellant or in the structure itself to indicate the exercise of the inventive faculty in designing the frame. The problem was solely to provide a continuous metal frame of "U" cross-section into which the circular sign could be inserted, either during fabrication of the frame or afterwards. The original idea of providing the sign with such a frame was not that of the patentees, and we find too many instances in the prior patented art, where very analogous types of frames were provided for articles needing this protection, to attribute any patentable novelty to the use of an integral frame as such. See patents to Huff, No. 439,514 (1890); to Tollner, No. 433,107 (1890); to Seymoure, No. 685,695 (1901); to Bailey, No. 837,028 (1906); to White, No. 1,346,360 (1920); to Krantz, No. 1,356,375 (1920); to Suhler, No. 1,440,846 (1923); to Mastin, No. 1,583,410 (application 1923); etc. The only element of ingenuity required was in devising the method by which the frame was to be made and the sign fixed therein without injury to the enamel. Perhaps a novel method of doing this would be patentable, but not the product of such a method, for the product was neither the conception of the patentees nor had it the attribute of novelty. Cf. Nestle-Le Mur Co. v. Eugene, Ltd. (C. C. A.) 55 F.(2d) 854, 857. It was merely a new use for an old and well-known element in like environment.

■ Turning to the method claim printed in the margin,[2] the only method disclosed by the specification is to first attach the ends of a flat strip of metal together, and then by a draw press operation to impart substantially an "L" shaped cross section to the strip. The specification continues: "The next step in the method of manufacturing the sign is to place within this ring, successively, a ring 5 of compressible material, such as paper; the sign proper, designated 1; and a second ring 6, which is the same as ring 5. By a subsequent operation, and by means of suitable dies, the ring is bent into the acute angular cross-sectional shape, as shown in Fig. 5. The third and final operation, performed by suitable pressure dies, imparts a channel formation to the ring, as most clearly shown in Fig. 6, this operation completing the rigid, and permanently attached frame 2."

The chief function of the paper rings 5 and 6 is to protect the sign when the frame is being painted, although there may be some cushioning effect protecting the enamel coating from being cracked or chipped during the final compression of the frame. Because of the assertion in the specification of the presence of this function, we abstain from passing upon the validity of the claim now considered. It is only necessary to say in this connection that we do not find this method claim infringed.

■ In recent decisions we have pointed out the elemental differences between a patent for a method or process, and a patent for an article or product of manufacture (Nestle-Le Mur Co. v. Eugene, Ltd., supra), and have held that infringement of a method claim is not established merely by a showing that the defendant has accomplished the same result, if in doing so he has followed a substantially different procedure or "mode of acting." Sherwin-Williams Co. v. California Spray Chemical Co. (C. C. A.) 61 F.(2d) 297, decided October 14, 1932. We have also referred to the apparent inconsistency between the doctrine of equivalents and the doctrine that it is the claim and that alone which measures the invention [Directoplate Corp. v. Donaldson Lithographing Co. (C. C. A.) 51 F.(2d) 199], but definiteness of claim de-

---

[2] "1. The herein described method of manufacture which consists in forming a frame of a strip of metal by connecting the ends of the strip together, placing within the frame a sign and layers of suitable material on opposite sides thereof, bending the strip to a form that is substantially U-shaped in cross section whereby it is caused to embrace the peripheries of the sign and said layers, painting the frame, and subsequently tearing away the said layers."

scription is required as much in a process patent as in a product patent. We must first find the steps of the claimed method distinctly and clearly set forth in the claim [Cf. Sun Ray Gas Corp. v. Bellows-Claude Neon Co., 49 F.(2d) 886 (C. C. A. 6); Bettendorf Co. v. Ohio Steel Co., 56 F.(2d) 777 (C. C. A. 6)], and, if this test be met, the question then is whether the defendant has in all substantial respects followed the method claimed.

The steps of the method covered by the above claim are stated with precision if the claim is to be construed in the light of the specification. A circular frame of "L" cross section is first formed after "connecting the ends of the strip together," for, unless this were done, there would be no support for the sign when "placed within the frame." Thereafter the upright of the "L" of the already circularly formed frame is bent down to give the frame a cross-sectional "U" shape. These operations are performed by the die or draw presses common to the sheet metal working industries. They constitute one way of achieving the desired result, but we find them lacking from the method by which the appellant's signs are made. The latter method reverts, rather, to the split hoop type of frame disclosed in the patents to Krantz, Seymoure, and Huff, supra, with only such modifications as were indicated by the nature of the job and the requirements of good mechanics.

In one respect only do we find substantial similarity of method. After the frame of appellant's signs has been fashioned, the sign inserted while the split hoop is still open, and the fitting which holds the ends of the hoop together attached, the sign is covered with paper extending beneath the edges of the frame and the frame is then pressed, as in the patent to Edmunds, No. 1,657,793, more tightly against the sign. This clamping is primarily to prevent the entrance of water when the sign is completed, but it is a step similar to the last part of the third or final step of the patented method as described in the specification. The other steps of the patented method, however, are omitted, and we need not decide whether a valid claim could have been based solely upon the use of paper as a cushion during final clamping, or whether the appellant, as a purchaser of the completed signs, would be liable as a contributory infringer because of placing the order. It is enough that the claim in suit is not so limited, and that a three-step process is not infringed by a method in which two of the steps are either omitted entirely or are replaced by

a "mode of acting" which is substantially different in its nature.

The decree of the District Court is accordingly reversed, and the cause is remanded, with instructions to dismiss the bill of complaint.