## JENSEN–SALSBERY LABORATORIES, Inc., v. O. M. FRANKLIN BLACK-LEG SERUM CO.

### No. 1013.

Circuit Court of Appeals, Tenth Circuit. Dec. 6, 1934.

For former opinion, see 72 F.(2d) 15.

Thos. M. Lillard, of Topeka, Kan., and Henry N. Ess, of Kansas City, Mo. (Thorpe & Thorpe and I. N. Watson, all of Kansas City, Mo., on the brief), for appellant.

M. F. Cosgrove, of Topeka, Kan., and A. J. O'Brien, of Denver, Colo. (Doran, Kline, Colmery & Cosgrove, of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

A rehearing was granted herein limited to two questions: Is the patent valid, and does Jensen-Salsbery "treat the resulting product" in the sense this phrase is used in the claims.

The essential facts are stated in our former opinion. See Jensen-Salsbery Lab. Co. v. O. M. Franklin Blackleg S. Co. (C. C. A. 10) 72 F.(2d) 15.

At the rehearing counsel for Franklin Company contended that the last phrase in claims 1 to 8, inclusive, which is identical in each [1] and reads: "And treating the resulting product to obtain the organism in suitable form for immunizing use," means the treatment with formalin and heat to kill the organisms described in the specification as follows:

"After suitable growth of the organisms has taken place the media is strained through any suitable substance, such as cotton or fine wire gauze, which serves to remove therefrom the coarser solid particles. A formalin solution is then added to the liquid containing the culture. * * * The resulting product is then allowed to stand for several days, about 3 to 7, and during this period it is preferably kept at a temperature of approximately 45°

---

[1] Claim 8 uses the word "resultant" instead of "resulting."

C. as by means of a water bath or in any other desired manner. The treatment with formalin results in killing the organisms in their vegetative and spore forms and this result is accomplished in less time and more satisfactorily if heat is employed as described. The killing of the organisms does not destroy their antigenic property. * * * "

Their argument is predicated primarily upon two points: One, that the words "resulting product" are used in the portion of the specification last quoted, and the other that claims 9 and 10 specifically describe a concentration step, while the other claims do not. They overlook the force of the phrase, "to obtain the organisms in suitable form for immunizing use." The treatment in question is not one to kill the organisms without destroying their antigenic properties, but one to put them in a form for use as a bacterin.

After describing the formalin and heat treatment, the specification describes a further treatment, "to obtain the organisms in a form for use as a vaccine or bacterin." It reads:

"After the foregoing treatment, the culture is allowed to settle, most of the organisms settling out in a short time. The product is then treated in any suitable way *to obtain the organisms in a form for use as a vaccine or bacterin* to be injected into the cattle and produce immunity from the blackleg disease. One method of procedure is to decant the supernatant liquid to about 1/10 of its original volume, the remaining liquid containing the organisms being used as a vaccine. An alternative procedure is to centrifuge the organisms out of the media and dry them. The dry powder thus obtained is used for direct injection as a vaccine by suspending the same in a suitable liquid suspension or, if desired, the dry powder can be made in the form of a pellet and used as a vaccine." (Italics ours.)

It will be noted that alternative treatments to obtain the organisms in suitable form for immunizing use are described. In no other portion of the specification is reference made to a treatment to obtain the organisms in form for use as a bacterin. It seems clear to us that the word "treating," in the phrase of the claims in question, has reference not to the treatment with formalin and heat to kill the organisms, but to the decanting or centrifuging treatments described in that portion of the specification last quoted. The wording of claim 2 lends support to this interpretation. It reads:

"The method of preparing a blackleg vaccine which *consists*"

(1) "In growing blackleg organisms in a suitable culture media,"

(2) "Treating the same after suitable growth with a formalin solution in concentration sufficient to kill the organisms without destroying their antigenic properties,"

(3) "And treating the resulting product to obtain the organisms in suitable form for immunizing use." (Italics ours.)

It will be noted that claim 2 clearly includes two treatments. The first is a treatment with formalin to kill the organisms. The second is a treatment to obtain the organisms in suitable form for immunizing use. Therefore in claim 2 the phrase in question has reference to some other treatment than the formalin treatment to kill the organisms.

Words used in a certain sense in one part of a contract will be deemed to have been used in the same sense in another part, unless the context indicates otherwise. Pringle v. Wilson, 156 Cal. 313, 104 P. 316, 24 L. R. A. (N. S.) 1090; Lyon v. Gray (Tex. Civ. App.) 288 S. W. 545, 551; Clark v. State Street Trust Co., 270 Mass. 140, 169 N. E. 897, 902; Chicago Home for Girls v. Carr, 300 Ill. 478, 133 N. E. 344, 346.

When the specification and claims are read together for the purpose of ascertaining from the entire contract the real intent of the parties, we think the construction is unavoidable that claims 1 to 8 include a third step, namely, a concentration treatment to put the organisms in suitable form for immunizing use.

Counsel for Franklin Company further contend that the phrase, "treating the resulting product to obtain the organisms in suitable form for immunizing use," in claims 1 to 8 "should be interpreted as broad enough to include anything that it was necessary to do in order to obtain the organisms, *after killing*, in suitable form for use as a vaccine." (Italics ours.)

It may be observed parenthetically that counsel for Franklin Company here take the position that the claims cover a further treatment after the organisms have been killed.

To broadly construe the claims to cover any treatment by which the organisms could be obtained in suitable form for immunizing use, would render the patent void for two reasons.

1. The claims would define the third step in the process only by the result to be ob-

tained and not by the process for producing it. They would be for a result and not for the means of producing it, and would be functionable. A function is not patentable.[2]

2. The specification would not describe the invention in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains to make, compound, and use it,[3] and the claims would not be sufficiently definite and certain to enable such a person to determine with certainty what the patentee claims as his invention.[4]

 Franklin Company cannot claim a means for obtaining the organisms in suitable form for immunizing use, not described in the specification or claims.

 Where the language of a patent permits of it, an interpretation that sustains and vitalizes the grant will be adopted rather than one that vitiates it. National Hollow B.-B. Co. v. Interchangeable B.-B. Co. (C. C. A. 8) 106 F. 693, 715; Stead Lens Co. v. Kryptok Co. (C. C. A. 8) 214 F. 368, 377; American Doucil Co. v. Twin City W. S. Co. (C. C. A. 8) 36 F.(2d) 673, 674.

Hence we construe claims 1 to 8, inclusive, as limited to the alternative treatments described in the specification for obtaining the resulting product in suitable form for immunizing use, or an equivalent treatment. Jensen-Salsbery does not use either of such alternative treatments or their equivalent.

We adhere to the conclusion reached in our former opinion that Jensen-Salsbery does

not infringe, and that it is unnecessary to pass on the validity of the claims.

The decree is reversed.

---

[2] Fuller v. Yentzer, 94 U. S. 288, 291, 24 L. Ed. 103; National Hollow B.-B. Co. v. Interchangeable B.-B. Co. (C. C. A. 8) 106 F. 693, 708, 709; O'Reilly v. Morse, 15 How. 62, 112, 113, 120, 14 L. Ed. 601: Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 257, 258, 48 S. Ct. 474, 72 L. Ed. 868; Union Switch & S. Co. v. Kodel Elec. & Mfg. Co. (C. C. A. 6) 55 F.(2d) 173, 176; In re Fuller (Cust. & Pat. App.) 35 F.(2d) 62, 63; Apco Mfg. Co. v. Temco Elec. Motor Co. (C. C. A. 5) 11 F.(2d) 109, 110; Heidbrink v. McKesson (C. C. A. 6) 290 F. 665, 668; Merit Oil Equip. Co. v. Fry Equip. Co. (C. C. A. 6) 48 F.(2d) 488, 489.

[3] 35 USCA, § 33; Permutit Co. v. Graver Corp., 284 U. S. 52, 57, 52 S. Ct. 53, 76 L. Ed. 163; Beidler v. United States, 253 U. S. 447, 453, 40 S. Ct. 564, 64 L. Ed. 1006; Reflectolyte Co. v. Luminous

Unit Co. (C. C. A. 8) 20 F.(2d) 607, 612; Incandescent Lamp Patent, 159 U. S. 465, 474, 475, 16 S. Ct. 75, 40 L. Ed. 221; Sun Ray Gas Corp. v. Bellows-Claude Neon Co. (C. C. A. 6) 49 F.(2d) 886, 887; Zenitherm Co. v. Art Marble Co. (C. C. A. 5) 56 F.(2d) 39, 41; Hazeltine Corp. v. Radio Corp. of America (D. C. N. Y.) 52 F.(2d) 504, 511.

[4] 35 USCA, § 33; Permutit Co. v. Graver Corp., 284 U. S. 52, 57, 52 S. Ct. 53, 76 L. Ed. 163; Incandescent Lamp Patent, 159 U. S. 465, 475, 16 S. Ct. 75, 40 L. Ed. 221; Merrill v. Yeomans, 94 U. S. 568, 573, 574, 24 L. Ed. 235; Steel Wheel Corp. v. B. F. Goodrich R. Co. (C. C. A. 6) 42 F.(2d) 406, 407; Sun Ray Gas Corp. v. Bellows-Claude Neon Co. (C. C. A. 6) 49 F.(2d) 886, 887; Vacuum Oil Co. v. Grabler Mfg. Co. (C. C. A. 6) 62 F. (2d) 54, 55, 56; Zenitherm Co. v. Art Marble Co. (C. C. A. 5) 56 F.(2d) 39, 41.